## Case No. 16,473.

### UNITED STATES v. THOMAS.

[2 Abb. U. S. 114;[1] 4 Ben. 370; 12 Int. Rev. Rec. 161.]

District Court, N. D. New York. Nov. Term, 1870.

SMUGGLING—REQUISITES OF INDICTMENT.

1. Merely importing goods subject to duty without having paid or secured the duties, is

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

not, in general, an offense. To constitute smuggling, for which an indictment may be sustained, there must be something in the manner of the importation which violates a statute defining the offense; such as secrecy or concealment, an intent to defraud the revenue, or the like.

[Distinguished in U. S. v. Nine Trunks, Case No. 15,885. Cited in Von Cotzhausen v. Nazro, 15 Fed. 899.]

2. An indictment for the offense of smuggling must allege the facts relied upon as rendering the importation alleged an offense, or state the particular illegality intended to be proved; and such allegation must be proved as laid.

[Cited in U. S. v. Claflin, Case No. 14,798; U. S. v. Nunnemacher, Id. 15,903; U. S. v. Kee Ho, 33 Fed. 335.]

Motion in arrest of judgment.

HALL, District Judge. The defendant was tried at the present term, and a verdict of guilty was rendered upon one count of the indictment against him. He thereupon moved an arrest of judgment on account of the alleged insufficiency of the count on which he was indicted. This count charged "that the said David H. Thomas, now or late of Niagara, in the county of Niagara, in the state of New York, heretofore, to wit, on the first day of September in the year of our Lord one thousand eight hundred and sixty-nine, at Niagara, in the county of Niagara, and state of New York, in said district, and within the jurisdiction of this court, did fraudulently, knowingly, and unlawfully receive and conceal certain goods, wares, and merchandise, to wit, five hundred pounds of nutmegs, after their importation into the United States contrary to law, knowing the same to have been imported contrary to law, in this, that the said goods, wares, and merchandise, so imported as aforesaid, were, at the time the same were so imported into the United States, subject to duty by law, the duties due and payable upon said goods, wares, and merchandise, not having been paid or accounted for, he, the said David H. Thomas, at the time he so received and concealed the said goods, wares, and merchandise, as aforesaid, well knowing that the duty due and payable upon said goods, wares, and merchandise, had not been paid or accounted for, contrary to the statute of the United States of America in such case made and provided, and against the peace of the United States and their dignity." The count was intended to be based upon the 4th section of "An act further to prevent smuggling and for other purposes," approved July 18, 1866 (14 Stat. 179), which provides "that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any goods, wares, or merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such goods, wares, or merchandise after their importation, knowing the same to have been imported contrary to law, such goods, wares, and merchandise shall be forfeited, and he or she shall, on conviction thereof before any court of competent jurisdiction, be fined in any sum not exceeding five thousand dollars, nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both, at the discretion of such court; and in all cases where the possession of such goods shall be shown to be in the defendant, or where the defendant shall be shown to have had possession thereof, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

It will be seen that the indictment in express terms limits the allegation that the nutmegs mentioned in the indictment were imported and brought into the United States contrary to law, by stating that the same, being subject to duty by law, were so imported and brought into the United States, without the duties due and payable thereon having been paid or accounted for; at least that is the substance of what it was intended to allege by the inartificial language used in the indictment. This makes it necessary to consider what is the true construction of the fourth section of the act of 1866, above recited, and whether the allegation made brings the case stated within its provisions. As a general rule it may be said that it is not contrary to law to import or bring into the United States goods subject to duty without having paid or accounted for such duties. In almost every case of importation the goods are not only brought into the United States, but are imported, in the true legal sense of that term as used in the revenue acts, before there is any obligation to account for or make payment of the duties. They are brought into the United States as soon as they are brought into its territory; and the act of their importation is complete when they are voluntarily brought into a port of delivery with intent to unlade them there (U. S. v. Lindsey [Case No. 15,603]); and if the goods are subsequently entered, and the other provisions of the law afterwards complied with, and the duties paid, no penalty or forfeiture is incurred.

Indeed, it is believed that there is no case in which a penalty or forfeiture is incurred, or can be enforced, or any crime or offense committed, simply because the duties on imported goods are not paid or accounted for before the importation was complete. It is, by acts or omissions subsequent to the importation, that forfeitures and penalties are incurred, or crimes or offences committed, unless there is some law expressly declaring the importation itself, or the manner of making it, unlawful. Section 19 of the act of August 30, 1842 [5 Stat. 565], which provides for the punishment of any person who "shall knowingly, with intent to defraud the revenue of the United States, smuggle or clandestinely introduce into the United States any goods, wares, or merchandise subject to

duty by law, and which should have been invoiced, without paying or accounting for the duty," makes the clandestine introduction or smuggling into the United States of dutiable goods, in cases therein provided for, a criminal offense, which is complete as soon as the goods are so clandestinely introduced or smuggled into the United States; but in such cases it is the secret and clandestine manner of the importation, with the intent to defraud the revenue, and not the non-payment of or accounting for the duties prior to the importation, which constitutes the gist of the offense.

There are many cases to which this fourth section of the act of 1866 was probably intended to apply, and to which it may be properly applied; but it is unnecessary to refer to more than two or three acts of congress to show what was probably the general intention of the national legislature in adopting the section under consideration. By section 5 of the act of July 10, 1861 (12 Stat. 257), the president was authorized, under the circumstances therein set forth, to declare the inhabitants of a state, or any section or part thereof, to be in a state of insurrection against the United States; and by the same section it was provided that thereupon all commercial intercourse by and between the same and the citizens thereof and the citizens of the rest of the United States should cease and be unlawful so long as such condition of hostility should continue; and all goods and chattels, wares, and merchandise, coming from said state or section into the other parts of the United States, and all proceeding to such state or section by land or water, should, together with the vessel or vehicle conveying the same, or conveying persons to or from such state or section, be forfeited to the United States. Section 4 of the same act (page 256), authorized the president to close ports of entry in certain cases, and give notice thereof by proclamation; and declared that thereupon all right of importation and other privileges incident to ports of entry should cease and be discontinued at such ports so closed, until opened by the order of the president; and that if, while said ports were so closed, any ship or vessel from beyond the United States, or having on board any articles subject to duties, should enter or attempt to enter any such port, the same, together with its tackle, apparel, furniture, and cargo, should be forfeited to the United States.

By some of the revenue acts it is made unlawful to import certain articles except in the form or condition particularly described. Thus, by section 1 of the act of July 28, 1866 (14 Stat. 328), it is provided that no cigars shall be imported unless the same are packed in boxes of not more than five hundred cigars in each box; and that brandy and other spirituous liquors may be imported in casks or other packages of any capacity not less than thirty gallons; and that wine in bottles may be imported in boxes containing not less than one dozen bottles of not more than one quart each; and that wine, brandy, or other spirituous liquors imported into the United States, and shipped after October 1, 1866, in any less quantity than therein provided for, shall be forfeited to the United States. And see, for similar provisions in respect to the importation of beer, ale, and porter, and refined, lump, and loaf sugar, section 103 of the act of March 2, 1799 [1 Stat. 701]. It is to such and similar importations contrary to law, and to the importation of articles the importation of which is entirely prohibited, that section 4 of the act of 1866 was intended to apply; and, as applied to such cases, the rule of evidence, a presumption of guilt, declared in that section, may well be justified; while it would be very harsh and oppressive if the provisions of the section in which it is found were to be applied to every case in which goods were actually imported or brought into the United States before the duties were paid or accounted for,—that is, to ninety-nine cases out of every hundred of honest importations.

Perhaps it might have been suggested, if the question had been at all argued on the part of the United States, that the indictment states that the nutmegs therein mentioned were imported contrary to law, and that so much of the indictment as states in what the illegality of the importation consisted, may be rejected as surplusage. But the short answer to that is, that this is a part of the description of the offense, and cannot be rejected as surplusage, even if the indictment would have been good if the particular illegality of the importation had not been set forth; for if an indictment set out the offense with greater particularity than is required, the proof must correspond with the averments, and nothing descriptive of the offense can be rejected as surplusage. U. S. v. Brown [Case No. 14,666]; U. S. v. Howard [Id. 15,403]; U. S. v. Foye [Id. 15,157]. But it is believed that the indictment would have been bad, if the allegations of illegality of the importation had been simply that it was contrary to law, without showing the facts constituting such illegality, or stating the particular illegality intended to be proved.

Upon the whole case, it is very clear that the count on which the defendant was convicted is not sufficient to sustain a conviction; and the motion in arrest of judgment is therefore granted.

Order accordingly.