## Case No. 15,497.

UNITED STATES v. JONNSON.

[See Case No. 15.482a.]

## Case No. 15,498.

UNITED STATES v. JORDAN et al.

[2 Lowell. 537; 1  23 Int. Rev. Rec. 9.]

District Court, D. Massachusetts. Dec., 1876.

CUSTOMS LAWS—ILLEGAL IMPORTATIONS — FORFEITURES—REPEALING STATUTES.

1. Section 2 of St. March 3, 1823 [3 Stat. 781], which imposes a forfeiture of double the value of goods illegally imported, upon any one who knowingly receives them. is not confined to goods imported from territory adjoining the United States.

2. Nor is that section confined to cases arising under statutes in operation when that section was enacted.

3. The act of entering goods by a false invoice comes within the definition of an illegal "importation" under that section.

[Cited in U. S. v. 2,419 Sheepskins, Case No. 16,589a.]

4. That section was repealed by the Revised Statutes, which were passed June 22, 1874 [18 Stat. 186]. and not before. and then not retroactively; and this case. which was begun May 1, 1874, is not affected by the repeal.

5. Congress appears, in Rev. St. § 5596, to express the opinion that this section had been repealed by some statute before 1874. and they probably had in mind the act of 1866; but this expression of opinion does not overrule U. S. v. Stockwell, 13 Wall. [80 U. S.] 431.

E. R. Hoar and G. P. Sanger, Dist. Atty., for the United States.

B. F. Brooks and F. W. Hurd, for defendants.

LOWELL, District Judge. The eighty-one counts for double values are brought under section 2 of the act of March 3, 1823 (3 Stat. 781), which imposes that penalty upon all persons who shall receive goods. knowing them to have been illegally imported and liable to seizure by virtue of any act relating to the revenue; which is understood, according to the decision in Stockwell v. U. S., 13 Wall. [80 U. S.] 531. to subject the importer himself to a penalty or forfeiture of treble the value of the goods so imported: one as importer, and two as receiver; and the declaration in this action is framed on that theory, which is not now denied by the defendants. But they maintain, in support of their demurrer. that in certain particulars this case differs from Stockwell's, and that these are of vital consequence. The illegality is alleged to have consisted in entering goods by means of fraudulent invoices.

1. The first point taken is, that the act of 1823 only applies to importations from adjacent territory. It is true that the title of the act makes it an amendment of that of 1821, which is exclusively devoted to such importations; but the second section mentions "any act relating to the revenue," and this is too clear to be controlled by the title.

1 [Reported by Hon. John Lowell, LL. D., District Judge. and here reprinted by permission.]

Hadden v. The Collector, 5 Wall. [72 U. S.] 107.

2. The second objection is, that the section in question is not prospective, but relates solely to statutes then in existence. Here, again, the language seems to be unambiguous, and to mean that as fast as laws are passed relating to the revenue, which impose forfeitures and permit seizures, this law will apply. The Case of Stockwell is in point, for the law which was said to have been violated in that case, as I understand it, was that of Aug. 30, 1842.

3. The third objection is, that all the illegal acts relied on were done after the importation of the goods, because that was complete when the vessel arrived at her port of destination, and entering goods is no part of the importation. The decisions cited establish beyond question that, for many purposes, such as fixing the date at which a statute raising or lowering duties takes effect upon any goods, the importation or bringing into the United States is consummated when the vessel arrives. If a different meaning is to attach to the word in the act of 1823, it is a subject of regret, because confusion must follow from the use of the same word in different senses in the same set of laws.

I am of opinion, notwithstanding, that it is impossible to confine the section within the strict limits demanded by the defendants' argument. The revenue laws use the words "to import," "to bring in," "to introduce," as synonymous. Thus the act of Aug. 30, 1842, § 19 (5 Stat. 565): "If any person shall knowingly and wilfully, with intent to defraud the revenue, smuggle or clandestinely introduce into the United States;" the act of July 18, 1866, § 4 (14 Stat. 179): "If any person shall fraudulently or knowingly import or bring into the United States," &c.; and there are many others.

Under these statutes, smuggling, or bringing in, or introducing goods, has been held by both the circuit and district courts for this district for a long course of years to be proved by evidence of the secret landing of goods, without paying or securing the duties, which, according to the argument here, would be quite inadmissible, if the importation in the sense contended for had no element of concealment about it. I have never known a case of smuggling in which any concealment on board the vessel was relied on by the government. The gist of the offence is the evasion or attempted evasion of the duties, and they, to be sure, are due when the vessel arrives: but they are not payable until some time after, and it is the default in paying which is the fraud, or in omitting the acts which immediately precede the payment.

These decisions have been acquiesced in by able counsel, and are the law of this circuit at least, and, I doubt not, of all, so far as the statute of 1842 is concerned. Here, then, we see that a bringing on shore without

making entry, &c., is part of the importation or introduction of the goods, and makes it illegal.

Under the statute of 1866, it was held by some very able judges, in the cases cited at the bar, that goods could not be said to be illegally imported unless the very act of bringing them within a port of the United States was unlawful. The law of this circuit is otherwise, as I have said; and, in a recent decision by Mr. Justice Strong, at circuit, U. S. v. Nine Trunks [Case No. 15,885], the cases referred to are held to be too narrow. In that case, an importer came over with his goods, packed in trunks, and passed them off for luggage, and procured them to be landed as such; then, becoming alarmed, attempted to make proper declaration of them. The learned judge held not only that the goods were landed without a permit, in the true sense of the law, but that they were illegally imported, in this, that the importer had not prepared himself with the invoices necessary to their entry at the custom-house. It was a clear case of smuggling, under the construction given to the act of 1842; but that statute had been repealed by the Revised Statutes through a misunderstanding, and the decision was, as I have stated, that is to say, that the statute of 1866 should be construed to include a fraud connected with the entry of the goods or an intent not to enter them. That decision, as I understand it, would apply the law to a fraudulent invoice as well as to the absence of an invoice.

Let us look at the history of this section and of the words used in it. The collection act of 1799, § 69 (1 Stat. 678), provides that if any person shall conceal or buy goods, knowing them to be liable to seizure by virtue of that act, he shall pay double the value. The act of 1823 adds the word "receive," and makes the knowledge to be of their having been illegally imported and liable to seizure under any revenue law, and not merely "liable to seizure under this act." It is by no means clear that "and" might not be construed "or" in this connection: but, passing that consideration, it seems clear that this section was intended to enlarge rather than to restrict the operation of section 67 of the act of 1799. I have not been told what illegal importations there could be under the statutes concerning the revenue then in force, unless we give the word an enlarged meaning; because, as was justly said by the defendants' counsel, the non-intercourse and navigation acts are not laws relating to the revenue, and I have not found any possible illegality, excepting as against those statutes, in the mere bringing of goods within the limits of a port of the United States.

By the act of 1799, importers of distilled spirits, wines, and teas, were obliged to make careful report and entry of those articles, for which very minute directions

were given. The articles were then to be inspected, and the inspector was to give a certificate to accompany each package, and to be passed over to every purchaser; and if any one in possession of such articles could not produce a certificate, the goods were liable to seizure; and if, upon the trial, the owner should not prove that the goods were "imported into the United States according to law," and the duties thereon paid or secured, they should be adjudged to be forfeited. Section 43 (1 Stat. 660). I cannot discover from the statute that the words, "imported into the United States according to law," mean, in this connection, any thing else than duly reported, entered, &c., and this not merely as to form, but in substance, that is, by a true report and entry. The defendants argue that this part of the act of 1823 refers merely to importations from adjacent territory, under the act of 1821. If this were so, 'there is no illegal importation possible in the restricted sense contended for. The act of 1821 provides, that every person coming from any foreign territory adjacent to the United States with merchandise subject to duty shall deliver a manifest thereof at the office of any collector or deputy collector which shall be nearest the boundary line or the road or waters by which the merchandise is brought; and, if he shall neglect or refuse to deliver the manifest, or pass by or avoid such office, the merchandise shall be forfeited. To neglect or refuse to deliver a manifest, or to avoid going to the nearest office, are acts which, according to the argument here, are subsequent to the importation, and therefore there was nothing on which the act of 1823 could operate. But if such neglect or avoidance makes the importation illegal, which this part of the argument admits, then I do not see why the presenting a fraudulent manifest, if that had been mentioned in the statute, as a fraudulent invoice is in the law which is said to have been violated in this case, would not equally relate back, if relation is necessary, and be a solid ground for holding the importation to be illegal.

Finally, there is U. S. v. Stockwell, 13 Wall. [80 U. S.] 531, which is the principal authority in all parts of this case, in which the charge was of receiving goods which had been imported without payment of the duties, to which the remarks already made apply, that the neglect to pay duties must have arisen after the goods were brought within the limits of the port of destination.

4. Another important and difficult question is whether the second section of the act of 1823 was repealed before May 1, 1874, the date of the writ in this action. It cannot be doubted that section 5596 of the Revised Statutes repealed this law; but this action being already on the docket on the 22d June, 1874, when the Revised Statutes were passed, and the repeal being conditional, saving all penalties and forfeitures, and all actions civil and criminal, it is essential to the defendants' case to carry the repeal further back.

They contend that the act of July 18, 1866 (14 Stat. 179), worked a repeal of the section in question; and they have furnished me with manuscript copies of the opinions of the district and circuit courts (Judges Blatchford and Johnson) for the Southern district of New York, in U. S. v. Claflin [Case No. 14,799], where this point is adjudged. As I cannot agree with these judgments, I am bound to give my reasons. The reasoning of the learned judges makes it appear very probable that congress considered section 2 of the act of 1823 to have been repealed by that of 1866. Congress say, in section 5596, that in respect to all statutes of which any part is contained in the revision, they repeal the parts which they have omitted, and that they have omitted only what was already repealed. The repeal is clear, but the reason may be an unsound one. I can recall to mind at this moment two instances, besides this, in which section 5596 repeals laws which had never been repealed or superseded before; and I have no doubt there are many others. U. S. v. Claflin [supra], decides that this expression of opinion by congress has the effect of a retroactive repeal, and binds the judgment of the courts in respect to causes of action arising between 1866 and 22d June, 1874, which had not ripened into a decree on that day. This is the point of difference between us. Congress had an undoubted right to repeal the act of 1823, and to drop with it all causes of action vested in the United States; but an expression of its opinion, not taking the form of a law, is not a precedent which I am to follow against a judgment of the supreme court. In Stockwell's Case the decision was that the section in question was not repealed by the act of 1866. It is said, in the opinion of Johnson, J., above referred to, that the forfeitures in Stockwell's Case had accrued before July 18, 1866, which is true; but as the statute of that date did not save penalties and forfeitures, but only actions and indictments then pending, and as the action against Stockwell was not then pending, the point was properly and necessarily before the supreme court, and was decided. Put in the strongest way for the defendants, the repealing sections of the Revised Statutes, as applied to this statute, read thus: Whereas, the supreme court has decided that the act of 1866 did not repeal that of 1823, and whereas, we think it did, now, therefore, we repeal it, but we save all penalties, actions, &c. Granting, as I have already done, the power of congress to repeal all laws which give penalties and forfeitures to the United States, and this without saving any not yet enforced, still it does seem to me clear that they carefully abstained from doing any thing of the sort in this particular case. What I do not grant, is the power

of congress to bind the court by a mere expression of opinion: it must be by a legislative act, and this they have not attempted.

Judge Blatchford has cited three late cases in the supreme court, in two of which the effect of the Revised Statutes, and in the third that of another statute, is referred to in construing earlier statutes and applying them to cases arising before, but determined after, the repeal: Murdock v. Memphis, 20 Wall. [87 U. S.] 590; Smythe v. Fiske, 23 Wall. [90 U. S.] 374; Bailey v. Clark, 21 Wall. [88 U. S.] 284. Neither of these cases decides that the opinion of congress is to control the courts. The first two appear to me to express the contrary opinion with reasonable clearness, though the point was not in judgment. The last is a case in which congress had said that a certain phrase in a former revenue act should be construed in a certain way favorable to the tax-payer. The court decided that this was the true construction, and added that the act of congress appeared to apply to cases arising before its passage; and they imply, undoubtedly, that congress may make such a declaration. This is precisely what I have already conceded to be within the power of the legislature; namely, to diminish the rights of the United States, though I should doubt very much their right to increase the burdens of the citizens retroactively. The difficulty which I find in this case is, to see that congress has made any such declaration. The general rule that neither congress nor any other legislature in the United States is to exercise the purely judicial power of deciding the state of the law, without a legislative act to take such effect as it may lawfully have, is one of the points upon which I know of no conflict of opinion, and, therefore, do not cite authorities for it.

If I had any right to express a personal wish, it might be that a higher authority shall find my construction of the repealing act to be other than that which I feel bound to affix to it. But in my own mind the point would not be doubtful, were it not for the case of U. S. v. Claflin; and, notwithstanding that decision, I am unable to reach a different conclusion. Demurrer overruled.

This case was compromised soon after the foregoing opinion had been delivered.