## GILLESPIE et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 29, 1926.)

No. 321.

**1. Customs duties ☜134.**

Indictment alleging facilitating transportation of smuggled whisky *held* to charge offense under Tariff Act 1922, § 593(b) (Comp. St. Ann. Supp. 1923, § 5841h13), and not under section 593(a), being Comp. St. Ann Supp. 1923, § 5814h12.

**2. Customs duties ☜134.**

Offense under Tariff Act of 1922, § 593(b) being Comp. St. Ann. Supp. 1923, § 5841h13, *held* established when goods are proven to have been brought into country contrary to law, although never unladen.

**3. Customs duties ☜134.**

Evidence *held* to sustain conviction for facilitating transportation and concealment of whisky, in violation of Tariff Act of 1922, § 593(b), being Comp. St. Ann. Supp. 1923, § 5841h13, as principal and as aiding and abetting, under Criminal Code, § 332 (Comp. St. § 10506).

In Error to the District Court of the United States for the Western District of New York.

William A. Gillespie and another were convicted for facilitating the transportation and concealment of whisky, brought into the United States contrary to law, and they bring error. Affirmed.

Writ of error to judgments of conviction entered in the District Court for the Western District of New York.

The indictment charged that plaintiffs in error did, during the night of March 12–13, 1925, wrongfully, etc., facilitate the transportation and concealment of certain cases of whisky of a strength violative of the statute and intended for beverage purposes, and did this "after the aforesaid [whisky] had been smuggled and clandestinely introduced into the United States from a foreign country, to wit, the Dominion of Canada, at North Tonawanda, New York, contrary to law; that is to say, without any permit having been issued by the Commissioner of Internal Revenue, stating the intoxicating liquor to be imported, as required by the Tariff Act of 1922 [42 Stat. 858], the defendants well knowing the same to have been imported and brought into the United States contrary to law, and with the intent of defendants to deprive and defraud the revenue of the United States contrary to statute, to wit, paragraph (b) of section 593 of the Tariff Act of 1922 [Comp. St. Ann. Supp. 1923, § 5841h13]."

The operative words of this statute are

that, "if any person fraudulently or knowingly imports or brings into the United States * * * any merchandise, contrary to law, * * * or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law," he shall be guilty of offense.

Section 593 (a) of this act (Comp. St. Ann. Supp. 1923, § 5814h12) provides that, if any person knowingly and willingly, with intent to defraud the revenue of the United States, smuggles or clandestinely introduces into the United States any merchandise which should have been invoiced, he, his aiders and abettors, shall be guilty of an offense.

Both plaintiffs in error reside in North Tonawanda. Kinzly was at the time mentioned in the indictment, and had been for a long time, the chief of the local police; Gillespie is a merchant, and an old friend of the police chief. On the evening of March 12th he had been out to dinner, and after returning home he was taking his motorcar to a garage, some time after 2 a. m., when he encountered Kinzly on the street.

Kinzly had been at home and in bed when summoned by telephone, and a person unknown to him (as he testified) said: "You had better come down to Gratwick's as quick as you can." He says he inquired as to the identity of the speaker, but the voice replied: "It don't make any difference. You get down there just as quick as you can."

Gratwick's was a lumber yard on the Niagara river. Kinzly thereupon telephoned the police station for information, and was told by the sergeant in charge that "they had some booze down there at the Gratwick dock." Kinzly then started for Gratwick's, and on his way encountered Gillespie, was hailed, and got into Gillespie's car, with the result that in that vehicle both the defendants went to a portion of Gratwick's yard fronting on the river.

Earlier in the evening a patrolman had observed what he evidently thought were motors laden with liquor driving toward Buffalo. He reported this to the sergeant in charge at police headquarters, whereupon this sergeant, with two patrolmen, took the police wagon and began a search along the river.

They went to "Gratwick's," a lumber yard, "one of the biggest in the city," filled with high piles of lumber, with roadways between the piles. About at the end of one of these roadways, said end being about 20 feet

from the dock or river edge, one of the patrolmen saw some men, as he put it, "standing on the dock." Some of the men ran away, but two or three were arrested, because at the dock or river edge was a tug, and the men who had been found on the dock when the police party came down the road through the lumber piles were engaged (as the patrolmen put it) in "loading whisky from the boat into" one of the motorcars (three in number), which were also on the dock at the time of discovery.

Further, when the police discovered what was going on, there is direct evidence that an unknown quantity of liquor had been unladen from the tug, and was either lying on the dock or had already been carried away by motors. The sergeant in charge telephoned the station house for assistance, and some more policemen came to the dock, who with the others seemed to have unloaded from the tug some more whisky, and subsequently conveyed back to the station house and locked up the men who surrendered when the first police party came in sight.

In the language of the sergeant in charge, "We got the thing pretty well cleaned up" when the "chief and Mr. Gillespie came down" in Gillespie's car. At that time one of the motorcars found on the dock by the policemen who first arrived was being used by one of the policemen to carry whisky to the station house, and the sergeant testifies that when Gillespie arrived on the scene he almost immediately inquired, "Where is the other car?" The sergeant went into the office of the lumber yard, which was within 100 feet of the place where the tugboat was lying, in order to telephone. He was there for a time not clearly stated, and when he emerged the tugboat had gone. The plaintiffs in error were near by, and Gillespie invited the party to get into his car, whereupon in that car the police force, including the chief of police, departed from Gratwick's, leaving the motorcars which had been originally discovered by the sergeant's party still on the dock, unless (according to some of the evidence) one of the cars had been driven off after Kinzly arrived and took charge, and while the sergeant was in the lumber yard office telephoning.

Most of the foregoing testimony was denied by Kinzly; but there is no doubt that from Gratwick's dock he went direct to the station house and turned loose the prisoners obtained by the sergeant's patrol. The only explanation given of this conduct was that he "didn't think we had anything on them."

13 F.(2d)—47

The whisky seized by the sergeant's patrol was subsequently turned over to the prohibition agents. The jury found both defendants guilty, and they brought this writ.

Martin Conboy, of New York City, for plaintiffs in error.

Percy R. Smith, Asst. U. S. Atty., of Buffalo, N. Y.

Before HOUGH, HAND, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). It was proven that whisky, bearing Canadian labels, was brought within the territorial waters and as to a part thereof remained on the boat when tied up to the soil of the United States, and as to another part was landed upon soil of the United States from the tug described on the night in question, and it was further proven that the men who either fled or surrendered when the first police party arrived at Gratwick's were busied in landing the whisky. The jury could infer from these facts that all of these men were engaged in transporting and secreting the liquor so landed.

Plaintiffs in error, however, are not accused of "running" this liquor, or of any offense under the National Prohibition Law; nor does that statute have any connection with their crime, except to render the bringing into the United States of the whisky in the manner above described unlawful, for reasons not necessarily having a connection with revenue. The statute relied upon, and above quoted, does not speak of smuggling; the statutory words in section 593 (b) are to *"bring into* the United States." It is in section 593 (a) that punishment is prescribed for one who "smuggles or clandestinely introduces into the United States any merchandise which should have been invoiced," etc.

Thus the indictment herein goes further than is necessary under section 593 (b). Under that section the defendants would be guilty if, after the whisky had been "brought into the United States," they "in any manner facilitated the transportation, concealment, or sale" thereof; whereas they are accused of facilitating the "transportation and concealment" of certain whisky after it had been "smuggled and clandestinely introduced into the United States."

The language of the indictment is not, however, harmful; for, while it may be admitted that bringing into the United States merchandise contrary to law is not necessarily smuggling, it is undoubtedly true that all

goods smuggled and clandestinely introduced into the United States are necessarily brought into that country contrary to law.

Smuggling is a word to be interpreted by reference to Keck v. United States, 172 U. S. 434, 19 S. Ct. 254, 43 L. Ed. 505, a case decided upon unusual consideration. We think the court's essential position is stated at pages 442, 443 (19 S. Ct. 254) and the opinion of Lowell, J., in United States v. Jordan, Fed. Cas. No. 15,498, 2 Low. 537, was practically adopted against the view of the minority that the actual unlading of goods on the shore was not an essential ingredient of the offense of smuggling.

Substantially the court in the Keck Case accepted and elaborated the definition of "smuggling" given in 1 Hawk. P. C. c. 30, § 1 (Ed. 1824): "Smuggling consists in bringing on shore, or in carrying from the shore, dutiable goods, wares, or merchandise, for which duty had not been paid, or goods the importation of which is prohibited." That, under this definition, smuggled goods were lying on Gratwick's dock when the police sergeant's party appeared there, is beyond all question. But, if there were smuggled goods there, there were also goods brought into the United States contrary to law. In fact, all the whisky still on the tug, while it was not yet smuggled, was in the United States and unlawfully brought there, because, as charged in the indictment, it was brought in without a permit. See, on the nature of smuggling, United States v. Thomas, Fed. Cas. No. 16,473, 4 Ben. 370; and, as to the applicability of section 593 (b) of the Tariff Act to the "running" of liquor, vide Nounes v. United States (C. C. A.) 4 F.(2d) 833; Bailey v. United States (C. C. A.) 5 F.(2d) 437; United States v. Cardwell (D. C.) 9 F.(2d) 146.

The first count in the Keck Case was based on R. S. § 3082 (Comp. St. § 5785), substantially identical with section 593 (b) of the Tariff Act of 1922. That count was held insufficient—and there was no dissent on this point—because of the failure to specify in the indictment in what way the importation was contrary to law. In the indictment before us it is specifically charged in the allegation that the importation was without the required permit.

[1, 2] However inartistic the indictment in this case may be, it is clear that it was intended to charge the offense created by section 593 (b), and not that created by section 593 (a).

These defendants are not charged with having smuggled the goods, or with being accessories to the smuggling; they are charged with having facilitated the transportation of the goods after they had been smuggled, and with knowledge that they had been brought into the country contrary to law. It is unnecessary to determine whether, as used in this indictment, the word "smuggling" is to be given a meaning different from that given to it by the majority of the court in the Keck Case; that is to say, as synonymous with "brought into" the country. We say this because, if, as here used, it means and was intended to mean "brought into" the country, and there unladen, the second element, the unlading, may be treated as surplusage, inasmuch as the offense created by section 593 (b) is established, if it be proven that the goods were brought into the country contrary to law, even though they were never unladen.

Whatever possible doubt there may be on this record, whether the smugglers made away with any goods which they, and not the police, had unladen, there was sufficient evidence for a jury to find that, when the defendants arrived, goods were there which had been "brought into" the United States contrary to law—that is, without the required permit—and that these disappeared.

[3] The evidence being clear that there was to defendants' knowledge whisky brought into this country at the time and place alleged, contrary to law, did the plaintiffs in error facilitate the transportation and concealment of the same? We think there was testimony from which a jury could find that they did; Kinzly as principal, and Gillespie as at least an aider and abettor, under Criminal Code, § 332 (Comp. St. § 10506).

Without dwelling on the evidence, confused and for the most part unwilling, as to just what whisky was on land when the raiding party arrived, and what became of it, it was plain that not all the whisky brought in was captured and kept, and there was also evidence that some of the whisky brought in was abandoned under the direction of Kinzly. It is plain that the escape of the tug, the abandonment of the rum runners' motorcars, and the discharge of the captured men were acts facilitating the transportation and concealment of each and every bottle of whisky that was on the tug on the trip in question.

Judgment affirmed.