## Case No. 15,759.

UNITED STATES v. MERRIAM et al.

[3 Chi. Leg. News, 113; 13 Int. Rev. Rec. 11.]

District Court, E. D. Michigan. Jan. 3, 1871.

IMPORTATION OF GOODS—FALSE ENTRY—ESTOPPEL OF CONSIGNEES—EVIDENCE—PRESUMPTIONS AGAINST VERDICT.

[1. On a prosecution for an entry of tar from Canada at a false valuation, evidence that other tar was entered at about the same time at a higher valuation was admissible.]

[2. The court will not presume, in order to invalidate a verdict finding one guilty of a false entry of tar from London, Canada, that other tar from Canada entered at the same time at a higher rate was purchased outside of London, and that the market price at different places in Canada was not uniform, it not even appearing that tar was dealt in at any other place in Canada.]

[3. Act March 3, 1863 (12 Stat. 739), imposing a penalty on one falsely and fraudulently effecting an entry of goods at less than their true weight or value was not repealed by Act July 18, 1866, § 4 (14 Stat. 179), providing a penalty for the unlawful importation of goods without entry or payment of duty.]

[4. Purchasers of goods from Canada, who, before the entry of the goods at the customhouse, were fully informed by the seller of the making and forwarding of false invoices for the purpose of entry, and who acquiesced therein and availed themselves of such fraudulent entry, are estopped, on a prosecution for such fraudulent entry, to say that they did not themselves perpetrate the unlawful act.]

[5. And such purchasers, if they knew that the article would be invoiced and shipped to them as owners, and that it would be so presented for entry, and took no steps to protest against this being done, or to inform the government officers upon the subject, are estopped to claim that they were not the owners at the time of the entry.]

Trial and conviction at June term, 1870, for false entry of a quantity of petroleum tar. The defendants [Joseph B. Merriam and William Morgan] now move for a new

trial. The grounds alleged as the basis of the motion are eight in number, and are stated in the opinion of the court.

H. B. Brown, for the motion.
A. B. Maynard, U. S. Dist. Atty., contra.

LONGYEAR, District Judge. The first ground alleged, that "the court erred in admitting evidence of the market value of the property imported," was abandoned at the argument. The second ground alleged is, that "the court erred in admitting evidence that other tar was entered about the same time at a higher valuation than that alleged to have been imported by defendants." This evidence was admitted as tending to prove the market value of the tar in question. It was contended on the argument, that for aught that appears in the evidence, this other tar might have been entered at the purchase price. Concede that it was, does not that tend to show market value? What is the market value of any commodity, but the price it brings in the market? Then certainly evidence of what other tar was purchased for at about the same time, would tend to show the market value of the tar in question. It was also said that the purchase price of such other tar was not evidence of the purchase price of the tar in question. Conceded. But the evidence was not admitted, as we have already seen, for that purpose. It was admitted to prove market value, and that purpose alone. It was further said that such other tar might have been entered at more than its market value. But such a possibility does not affect the competency of the evidence for the purpose for which it was admitted. If it had appeared that it was so entered, the weight of the evidence in question would of course have been destroyed.

It was also contended, with much force and earnestness, that there was no evidence where this other tar was purchased; non constat it came from places where the market value was much higher than at London, in Canada, where the tar in question was purchased. It is much to be regretted that congress has as yet made no provision for a short-hand reporter for the federal courts. The importance of having the proceedings and evidence fully reported, especially in criminal cases, is forcibly illustrated by the question here raised, and it cannot well be over-rated. As it is, court and counsel must rely upon their own incomplete and often imperfect memorandums made at the time. When these memorandums are silent upon any given point, it is no evidence that the testimony as to that point was silent. In such case court and counsel are left entirely to their recollections. My minutes simply show that such evidence of other entries was offered, objected to, and admitted. My recollections, in this instance, are at variance with that of the learned counselor.

But as my memory is at least as likely to be at fault as his, I shall not base my decision wholly upon it. This specific point was not made on the trial, when the defect, if it be one, might have been cured. Again, the evidence did show that this other tar was imported from Canada, and it did not appear that the article was produced or dealt in at any other place in Canada than where the tar in question came from, or that the market value was not uniform, and the court will not now presume two such important facts to invalidate the verdict.

The third ground alleged, that "the court erred in admitting evidence of conversations between Edwards and Lamb, and others, respecting the market value of tar" (admitted on the authority of the Cliquos Champagne Case, 3 Wall. [70 U. S.] 114), was abandoned on the argument.

The fourth ground alleged is, that the court erred in refusing to charge the jury "that defendants could not be convicted under the first and second counts." The first and second counts of the indictment are laid under section 3 of the act of March 3, 1863 (12 Stat. 739), which provides, "That if any person shall, by the exhibition of any false sample, or by means of any false representation, or device, or by collusion with any officer of the revenue, or otherwise, knowingly effect, or aid in effecting an entry of any goods, wares or merchandise at less than the true weight or measure thereof, or upon any false classification thereof, as to quality or value, or by the payment of less than the amount of duty legally due thereon, such person shall, upon conviction thereof, be fined in any sum not exceeding $5,000, or be imprisoned not exceeding two years, or both, at the discretion of the court." It is contended that this section is supplied by section 4 of the act of July 18, 1866 (14 Stat. 179), and consequently repealed by the last clause of section 43 of the same act (page 188). Section 4, of the act of 1866 provides, "that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any goods, wares or merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment or sale of such goods, wares or merchandise, after their importation, knowing the same to have been imported contrary to law, such goods, wares and merchandise shall be forfeited, and he or she shall, on conviction thereof before any court of competent jurisdiction, be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both, at the discretion of said court; and in all cases where the possession of such goods shall be shown to be in the defendant, or where the defendant shall be shown to have had possession thereof, such possession shall be deemed evidence sufficient to authorize conviction, unless the

defendant shall explain the possession to the satisfaction of the jury." And section 43 of said act provides that a number of acts and parts of acts particularly mentioned, "and all other acts or parts of acts conflicting with or supplied by this act be, and the same are hereby repealed." Do the provisions of section 3 of the act of 1863 conflict with, or are they supplied by, section 4 of the act of 1866? If the act, the punishment for which is provided by the act of 1863, constitutes a part of the act of importing, or bringing into the United States, then the former is no doubt supplied by the latter, otherwise not. In the act of 1863, the effecting, or aiding to effect, an entry in the manner or by the means specified, is the act punished. In the act of 1866, it is the importing or bringing into the United States in the manner there specified. Importation is the act of bringing goods, wares and merchandise into the United States from a foreign country. They are brought into the United States as soon as they are brought into its territory; and the act of their importation is complete when they are voluntarily brought into a port of delivery with intent to unlade them there. U. S. v. Lindsey [Case No. 15,603]; The Boston [Id. 1,670]; The Mary [Id. 9,183]; U. S. v. Vowell, 5 Cranch [9 U. S.] 368; Arnold v. U. S., 9 Cranch [13 U. S.] 104. The importation, as thus defined, must of course be complete before the duty to effect an entry can arise. It follows, therefore, as a necessary conclusion, that the act of effecting an entry can constitute no part of the act of importation. It follows the importation, is consequent upon it, but is no part of it. The importation provided against in the act of 1866 is importation "contrary to law." The unlawfulness here meant is limited to the act of importation, and cannot be extended to any act done after the importation is complete, and therefore does not apply to the act of effecting an entry. See U. S. v. Thomas [Case No. 16,477]. It may be asked, to what class of cases, then, will section 4 of the act of 1866 apply? The learned judge of the Northern district of New York, whose opinions are always entitled to great weight, has, in the case of U. S. v. Thomas, above cited, given us his views upon that question. He applies the section to importation where there is an express prohibition, or where the goods imported are required to be in a certain prescribed form, condition, or quantity, as in some of the revenue acts. It is to be observed that the learned judge does not assume to limit the operation of the section to the matters to which he applies it by way of illustration, neither was it necessary for him to do so in the case then before him. However this may be, section 4 of the act of 1866 undoubtedly has a broader application than what might seem at first view to be given to it in the case last cited. The language of the section is "that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any goods, wares, or merchandise, contrary to law," etc. Now, to import, in its general signification, means to bring into the United States. Why then are these additional words, "or bring" into the United States, used? They are either mere surplusage, or they mean something more than what is included in the words "to import," according to their ordinary signification. To import goods, wares, and merchandise into the United States, in the connection in which the words are here used, evidently means an importation in the ordinary manner, so far as the means and manner of importation are concerned, but contrary to law. "To bring" goods, etc., into the United States, in the connection in which the words are used, means the introduction of goods, etc., into the United States by any other means or in any other manner than that of importation proper, contrary to law; and in this sense will not those words cover any smuggling or clandestine introduction into the United States of any goods, wares or merchandise, subject to duty by law, without attempting to effect an entry at all, and without paying or accounting for the duty? Such was the view of this section taken in the Case of Landsberg [Case No. 8,041], decided by this court, in March term, 1870. But the offense provided for in section 3 of the act of 1863 is a very different one from that last above described. The gist of the offense here is the false and fraudulent manner of effecting an entry, where an entry is attempted to be made, while in the other case it is the clandestine introduction of the goods, etc., without entry or payment of duty. I hold, therefore, that section 3 of the act of 1863 is not repealed by section 4 of the act of 1866, and that the first and second counts of the indictment are well laid under said section 3.

The fifth and sixth grounds alleged are that the court erred in refusing to charge the jury that there was no evidence to sustain the first, second and third counts, and that unless the jury found that the tar was actually entered by the defendants themselves, or by an agent previously authorized by them, the defendants knowing that the agent was entering it at less than its cost in Canada, the defendants must be acquitted upon the first, second, and third counts. The following facts were clearly established by the evidence: That the tar was purchased by defendants of one Lamb, at London, Canada, at a fixed price there, to be delivered, however, at Cleveland, Ohio, at a price made up at the purchase price at London with all charges for freight, duty, etc., added, the defendants paying such charges and deducting the same from such price at Cleveland, and so, in the result, actually paying only the original price at London. The tar was shipped to defendants by the

Great Western Railway to Detroit, and thence by the Michigan Southern and Lake Shore Railroad to Cleveland. Lamb made out two sets of invoices, one at the true purchase price to send to defendants and one at much less, for the purpose of entry at Detroit. These latter invoices were delivered to the agent of the Great Western Railway for him to make the entry at Detroit in the usual manner. The tar was so entered by the agent, as agent for defendants, upon such false invoices, the duty paid and the tar forwarded to and received by defendants at Cleveland. Thus far, there is nothing to connect the defendants in any manner with the false entry. There is nothing to show that the agent who made the entry had any knowledge of the spurious character of the invoices, and there can be no doubt that if there were no further evidence in the case, the defendants could not be held liable for the false entry. But there is further evidence. The correspondence between Lamb and the defendants, introduced in evidence, clearly establish the following facts: That the defendants were fully and specifically informed by Lamb of the making and forwarding of the false invoices and of their contents, both before and after they were made; that the tar would be shipped in their name, as owners, by the Great Western Railway; that the false invoices would be delivered to the agent of the railway company, for the purposes of entry, at Detroit; that the duties would be paid and added to the charges, the whole to be paid by them on the arrival of the tar in Cleveland, and that all this was done accordingly. Now it is true that the defendants did not make the entry by themselves in person. It is also true that they did not, by themselves, give the agent of the railway company specific instructions to make the entry for them. But, as has been seen, they were pre advised, and before any entry had been made, that this had been done for them, and they acquiesced in it and availed themselves of it. It is now too late for them to turn round and say that they are not liable because they did not do these things in person. They allowed another to do an unlawful act for them and in their name, with full previous knowledge of all the facts and subsequent acquiescence, and they are now estopped from denying their liability for that act. Subsequent acquiescence or ratification alone, unconnected with a previous or concurrent knowledge or intent, would undoubtedly be insufficient to hold a party liable under such circumstances. But with such previous knowledge or intent, subsequent acquiescence is competent to be taken into consideration. There was therefore no error in refusing to charge as requested.

The seventh and eighth grounds are that the court erred in refusing to charge the jury "that there was no evidence to support the fourth count," and that if the jury found that Lamb contracted to deliver the tar in Cleveland, the defendants must be acquitted under the fourth count. The reason given at the time for this refusal, was, that it is provided in section 62, act of 1799 (1 Stat. 675), that for the purposes of entry, the consignee shall be deemed the owner of the property imported. I am satisfied from the able argument of the counsel for the defendants. and the authorities cited, that the section in question was special in its application, and if not in fact obsolete, has no application to this case. The reason given for the refusal to charge therefore was erroneous, and if the ruling has no other ground to stand upon, it was error. Let us see then how the matter stands independent of the statute. For, although the reason given may be unsound, the conclusion arrived at is not therefore necessarily so. By the agreement between Lamb, the vendor, and the defendants, for the delivery of the goods in Cleveland, they would not become the property of defendants until so delivered, as between the defendants and Lamb. But how is it as between the defendants and the United States under the circumstances of this case? The tar, as we have seen, was invoiced and shipped to the defendants as owners. and was presented for entry as their property. This was sufficient prima facie to warrant the customs officers in entering it as such. The defendants knew the tar would be and was so invoiced and shipped, and, of course, that it would be so presented for entry. They took no steps to protest against its being so done, or to give the officers of the government correct information upon the subject, but afterward availed themselves of the act. As between them and the United States the defendants are now estopped from claiming that they were not the owners at the time of the entry. To allow such a claim under such circumstances would open the door to the perpetration of unlimited frauds upon the revenue with perfect impunity to the perpetrators. The motion for a new trial is denied.