### UNITED STATES v. CAMINATA.

(District Court, E. D. Pennsylvania. March 29, 1912.)

#### No. 12.

1. CUSTOMS DUTIES (§ 125*)—OPIUM—IMPORTATION—ELEMENTS OF OFFENSE.

Act Cong. Feb. 9, 1909, c. 100, § 1, 35 Stat. 614 (U. S. Comp. St. Supp. 1909, p. 658), prohibits the importation of opium into the United States except for medicinal purposes under regulations, and section 2 provides that if any person shall knowingly import or bring into the United States any opium contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation and concealment or sale of such opium, or derivative therefrom, after importation, he shall be guilty of an offense. *Held*, that the offense described in section 2 is committed whenever smoking opium is fraudulently and knowingly brought by the offender within the territorial limits of the United States; the offense being complete, though the opium may not have been landed from the ship, or carried across the customs lines.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 266; Dec. Dig. § 125.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CUSTOMS DUTIES (§ 134*)—OPIUM—WRONGFUL IMPORTATION—POSSESSION.

Act Cong. Feb. 9, 1909, c. 100, 35 Stat. 614 (U. S. Comp. St. Supp. 1909, p. 658), prohibits the importation of smoking opium, and declares that, whenever a defendant is shown to have or to have had possession of opium or a preparation thereof, such possession shall be deemed sufficient to authorize a conviction, unless defendant shall explain the same to the satisfaction of the jury. *Held*, that where the steward of a vessel, bound for Philadelphia, was found to have smoking opium in his possession as the vessel was proceeding up Delaware Bay, such possession was sufficient to sustain a conviction for violating the act.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 336–339; Dec. Dig. §. 134.*]

Prosecution by the United States against Manoel Caminata. On motions for new trial and arrest of judgment. Overruled.

Jasper Yeates Brinton, Asst. U. S. Atty.

J. Addison Abrams, for defendant.

J. B. McPHERSON, District Judge.   [1]  The argument on behalf of the government will appear by the following summary of the excellent brief presented by the Assistant United States Attorney:

"This motion presents a question of wide importance to the government, vitally affecting the future enforcement of the Opium Act of 1909 (Act Feb. 9, 1909, 35 St. 614). By the first section of that act, it is made unlawful 'to import into the United States opium in any form or any preparation or derivative therefrom: Provided, that opium, * * * other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations.'

"By the second section it is provided 'that if any person shall fraudulently or knowingly import or bring into the United States or assist in so doing, any opium or any preparation or derivative therefrom contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment or sale of such opium or preparation or derivative therefrom, after importation, knowing the same to have been imported contrary to law,' such person shall be deemed guilty of an offense and the opium shall be forfeited. This section further provides that whenever, on a trial for a violation of the section, 'the defendant is shown to have or to have had possession of such opium or preparation or derivative therefrom, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury.'

"The evidence clearly showed that the opium in this case was brought within the territorial boundaries of the United States, to wit, into Delaware Bay, upon a vessel on which the defendant was steward. The inference was unavoidable that it had been thus fraudulently and knowingly brought in contrary to law by some one. It was found in defendant's possession, thus fairly raising the presumption of guilt as declared by the court to the jury. There was further direct evidence that the defendant was guilty of the crime. At the time of his arrest, defendant was within the port of Philadelphia, and thus within the jurisdiction of the state of Pennsylvania and of this court. The opium had been previously seized on the vessel by the officers of the government.

"On the above facts, defendant contends that the offense described in the act is not committed until the opium is brought on shore, and relies in support of his contention upon the celebrated case of Keck v. United States, 172 U. S. 434 [19 Sup. Ct. 254, 43 L. Ed. 505], and other cases arising under the customs laws.

"The government submits in the first instance that this contention is based on a totally false analogy and on a misconception of the true purpose and character of the opium act. This act is not a customs law designed to avoid fraud upon the revenue, but is purely a prohibitory statute, absolutely for-

bidding the bringing into this country from abroad of an article deemed by Congress to be injurious to the health and morals of our people. The act has no relation to the customs system, and the fine distinctions which are discussed in the customs cases, relating to the time when the obligation to pay customs duties first accrues, have no bearing whatever upon a case of this character. The words 'import or bring' as used in this act. should be interpreted in their natural and literal meaning in the light of the purpose of the act in which they occur. Interpreted thus, they clearly prohibit the bringing of the prohibited article within the territorial boundaries of the United States—that is, alike within the waters or upon the lands—and to say that the commission of the offense is suspended until the actual landing of the goods misses wholly the prohibitive character of the act.

"Wholly apart from the distinction above suggested, the Keck Case lends no comfort to the defendant. The question there presented turned entirely on the definition of the word 'smuggling' as it occurred in R. S. 2865 (U. S. Comp. St. 1901, p. 1905). While, the indictment in that case included a count under R. S. 3082 (U. S. Comp. St. 1901, p. 2014), a section which includes the words 'import or bring,' this count was summarily disposed of by the Supreme Court on the ground of vagueness. and no question of the interpretation of these words was then or subsequently raised. Moreover, a distinction fatal to defendant's analogy was carefully drawn in the opinion of the court itself between the technical act of smuggling and those miscellaneous acts precedent to this special offense which might well include such acts as would fall within the description of 'import or bring.' See specially the language of the court [172 U. S.] on pages 449 and 454 [19 Sup. Ct. 254, 43 L. Ed. 505], and note also Anti-moiety Act of June 22, 1874 (18 Stat. at L. 186, c. 391 [U. S. Comp. St. 1901, p. 2018]). Nor has any case been discovered where the word 'import' has been limited to the actual landing of goods, its narrowest definition even under the customs laws being a restriction to the bringing within a port. Moreover, even under the customs laws. a possible distinction has been suggested between the words 'import' and 'bring in.' Thus, in the case of United States v. Chesbrough [D. C.] 176 Fed. 778, cited by the defendant, Judge Rellstab uses this significant language:

" 'Section 3082 uses the phrase "import or bring." The demurrant contends that these words are synonymous. They may or may not be, *according to the legislative purpose for which they are used.'*

"The government merely asks the court to interpret the act in the light of the *legislative purpose* referred to by Judge Rellstab. It is well known that in the great majority of cases of this character the prohibited opium, which is readily concealed and easily brought ashore and disposed of, can only be successfully seized before it is landed. On the one hand, the defendant contends for a narrow technical construction of the act that would largely defeat its purpose. On the other hand, the government contends for the natural and literal interpretation that will enable that purpose to be carried into effect."

I agree with this reasoning, and hold:

(1) That the offense described in section 2 is committed whenever smoking opium is fraudulently and knowingly brought by an offender within the territorial limits of the United States. The offense is then complete, although the opium may not have been landed from a ship, or been carried across the customs lines.

[2] (2) That the offender's possession of such opium within the territory of the United States—his possession of it elsewhere is not now in question—is sufficient evidence of guilt to justify a jury in convicting.

In the present case the prisoner was arrested, and smoking opium was found in his possession, while the vessel on which he was employed was moving up the Delaware river and was near the city of Philadelphia, her port of destination.

The motions are overruled.