## UNITED STATES v. SISCHO.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1921.)

No. 3499.

1. **Customs duties ⚙⟿62—Statute requiring manifests to state cargo were to aid in collection of duties.**

Rev. St. §§ 2806-2809 (Comp. St. §§ 5503-5506), requiring merchandise brought in to be included in manifest, and imposing a penalty for violation, were designed to enable the government to collect the duties on dutiable articles coming into this country from foreign ports.

2. **Customs duties ⚙⟿129—"Merchandise" "capable of being imported" includes only lawful imports; "chattels;" "capable."**

Within Rev. St. § 2766 (Comp. St. § 5462), defining "merchandise," as used in that title, as including goods, wares, and chattels of every description, capable of being transported, merchandise means any movable object of trade or traffic, "chattels," which may include every species of property less than freehold, obviously only refers to chattels personal, which include all things movable, and "capable" means fit, or adapted, or possessing legal capacity for, so that the phrase "capable of being imported" refers only to things which may be lawfully imported.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capable; Chattel; Merchandise.]

3. **Statutes ⚙⟿188—Words given common meaning, unless limited by context.**

Words of common use are to be understood in their natural, plain, ordinary, and genuine signification, as applied to the subject-matter of the enactment, unless such meaning is limited by the context.

4. **Customs duties ⚙⟿129—Master not liable for penalty for omitting smoking opium from manifest; "merchandise."**

Under Comp. St. §§ 8800, 8801, prohibiting the importation of opium prepared for smoking, such opium is not "merchandise," as defined by Rev. St. § 2766 (Comp. St. § 5462), since it cannot be lawfully imported, and therefore the master of a vessel is not liable for the penalty imposed by Rev. St. § 2809 (Comp. St. § 5506), on merchandise brought into the country without being shown on the vessel's manifest; the words "brought into," as used in section 2809, not having the effect of enlarging the definition of merchandise, contained in section 2766.

⚙⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Statutes ⟡224—Meaning of words and phrases not fixed by use in unrelated statutes.**

The signification of words and phrases is not to be fixed by their use in totally unrelated statutes.

**6. Customs duties ⟡129—Opium statute held not to change construction of merchandise in customs laws.**

Comp. St. § 8801f, subjecting a vessel which brings in opium not included in its manifest to the penalty imposed by Rev. St. § 2809 (Comp. St. § 5506), on the vessel and the master for merchandise brought in without being included in the manifest, does not enlarge the construction of the word "merchandise," as used in the Revised Statutes section, so as to include opium prepared for smoking, which could not be lawfully imported, within the Revised Statutes section.

**7. Customs duties ⟡129—Statute extending penalty to vessel held not to extend it to master.**

Comp. St. § 8801f, subjecting a vessel which brought in opium prepared for smoking, which was not included in its manifest, to the penalty imposed by Rev. St. § 2809 (Comp. St. § 5506), on the vessel and the master for merchandise brought in without being included in the manifest, did not make the master of a vessel, which brought in such smoking opium, liable for the penalty.

Hunt, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by the United States against Wesley L. Sischo to recover a penalty. Judgment for defendant (262 Fed. 1001), and the United States brings error. Affirmed.

Robert C. Saunders, U. S. Atty., and Robert E. Capers, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

Daniel Landon, of Seattle, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an action instituted by the government, under section 5803, Comp. Stat. 1918, to recover a penalty imposed by the collector of customs against the defendant, Wesley L. Sischo, in the sum of $6,400, for importing into this country 100 five-tael tins of opium, prepared for smoking purposes, without including the same in the ship's manifest. Sischo was the owner and master of the gasoline launch by which the opium was brought in, and the penalty was imposed under section 2809 of the Revised Statutes (Comp. St. § 5506). The question involved for decision is whether Sischo was subject to be penalized by the collector of customs for not having included the opium in the vessel's manifest.

Section 2806, Revised Statutes (Comp. St. § 5503), inhibits the bringing of any merchandise from any foreign port into the United States in any vessel, unless the master has on board manifests in writing of the cargo, signed by such master. Sections 2807 and 2808 (Comp. St. §§ 5504, 5505) provide what the manifests shall contain, and how the merchandise destined to be delivered at different districts or ports shall be listed and arranged thereon. Section 2809 reads as follows:

"If any merchandise is brought into the United States in any vessel whatever from any foreign port without having such a manifest on board, or which shall not be included or described in the manifest, or shall not agree therewith, the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest; and all such merchandise not included in the manifest belonging or consigned to the master, mate, officers, or crew of such vessel, shall be forfeited."

By section 2766 (Comp. St. § 5462):

"The word 'merchandise,' as used in this title, may include goods, wares, and chattels of every description capable of being imported."

[1] These statutes were obviously designed to enable the government, among other things, to collect the duties upon all dutiable articles coming into this country from foreign ports, and to that end it was desirous that it be advised by the manifests of what merchandise capable of being imported was aboard ship, so that the proper assessment of duties could be made by the collector of customs.

Let it be observed that the master is subject to a penalty equal to the value of all *such* merchandise not included in the manifest, and if *such* merchandise not so included is consigned to or belongs to the master, it shall be forfeited. Thus the master, as it relates to his own goods, is not only penalized to the extent of their value, but he loses his goods as well—a very drastic punishment—all, it must be noted, for failure to manifest them. But it seems that he is not further penalized as a smuggler, or for an attempt to introduce goods into the United States without paying the duty to which they are subject, by reason of such failure.

Smuggling is a distinct offense, and is denounced by different statutes, and penalized according to the nature of the act and the article or goods involved, and is more particularly defined by section 5798, U. S. Comp. Stat. 1918 (Compact Edition), which reads in part:

"Provided, that for the purposes of this act [of June 22, 1874, § 4, 18 Stat. 186], smuggling shall be construed to mean the act, with intent to defraud, of bringing into the United States, or, with like intent, attempting to bring into the United States, dutiable articles without passing the same, or the package containing the same, through the custom house, or submitting them to the officers of the revenue for examination."

The importation of opium into the United States in any form is declared to be unlawful, with the exception—

"that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only," under regulations of the Secretary of the Treasury, "and when so imported shall be subject to the duties which are now or may hereafter be imposed by law." Section 8800, U. S. Comp. Stat. 1918 (Compact Ed.).

Section 8801 denounces the importation of opium contrary to law, and affixes a penalty of forfeiture, accompanied by fine and imprisonment, making the offense a felony. Section 8801f makes provision as follows:

"Whenever opium or cocaine or any preparations or derivatives thereof shall be found upon any vessel arriving at any port of the United States which

is not shown upon the vessel's manifest, as is provided by sections 2806 and 2807 of the Revised Statutes, such vessel shall be liable for the penalty and forfeiture prescribed in section 2809 of the Revised Statutes."

The defendant, Sischo, has been prosecuted under section 8801, Comp. Stat. 1918. He was convicted, and is now serving a term in the penitentiary. The opium found in his possession was forfeited to the government, as was also his gasoline launch. Under what sections the forfeiture of the opium and the vessel was exacted does not appear.

[2] The inquiry here presented turns wholly upon the meaning to be attributed to the phrase "capable of being imported." Does it apply to such merchandise as may lawfully be imported into this country, or does it apply to all goods, wares, and chattels, of whatsoever nature, that might be brought in, whether of prohibited introduction or not?

It must not be overlooked that the statutes with which we are dealing are customs statutes, and are designed for the enforcement of the collection of revenues assessable upon dutiable articles. To this end, no doubt, it is required that all merchandise capable of importation shall be contained in the ship's manifests, so that the customs officers may determine what is subject to duty and what is not. It would not be expected that articles prohibited introduction within the United States would be mentioned in the manifest, because the presumption would be that the master would not bring them in, for if he did he would breach the law, and subject himself to the penalty imposed for importing prohibited articles. Congress, therefore, had no occasion to legislate in these statutes for the protection and the enforcement of the payment of duties on merchandise which it did not intend should be brought in under any conditions.

[3] But why should Congress deem it necessary to qualify the term "merchandise" by the phrase "capable of being imported," if it intended to comprise all goods, wares, and chattels of whatsoever nature, or, we may say, all such as are susceptible of being carried from one country into another?

"Words of common use are to be understood in their natural, plain, ordinary, and genuine signification as applied to the subject-matter of the enactment." Endlich on Interpretation of Statutes, § 2.

But it is self-evident that such meaning may be limited by the context. "Merchandise" signifies, in general:

"Any movable object of trade or traffic; that which is passed from hand to hand by purchase and sale; specifically, the objects of commerce; a commercial commodity or commercial commodities in general; the staple of a mercantile business; commodities, goods, or wares bought and sold for gain." Century Dictionary.

"Chattel" is a term of broader signification, and includes:

"Every species of property, movable or immovable, which is less than a freehold." Bouvier's Law Dictionary.

But of course Congress did not intend by the use of that term to include chattels real, and it is only chattels personal to which the law alludes.

270 F.—61

"Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, corn, garments, and everything else that can be put in motion and transferred from one place to another." Bouvier's Law Dictionary.

The word "capable" is used in different senses, but among the synonyms given by the Century Dictionary are "qualified," "fitted," "adapted."

Now, if Congress meant by its definition of merchandise to embrace all goods, wares, and chattels capable of being transferred from one place to another, or of being transported, why did it not so enact—why did it say "capable of being imported" instead? We must attribute to Congress some apt purpose in choosing language to define or express its meaning. It is clear that "capable of being imported" and "capable of being transferred from one place to another," or transported, are not equivalent expressions, and we must assume that Congress understood the distinction, and therefore chose the former to express more precisely its purpose and meaning. Things that are prohibited entry into this country are not, in a legal sense, adapted to or susceptible of entry; and, Congress seeking to be specific, may we not reasonably infer that it used the phrase "capable of being imported" designedly and deliberately to include those things importable, and not all things transferable or transportable? One of the secondary meanings given the word "capable" is:

"Having legal power or capacity: as, a bastard is not capable of inheriting an estate." Century Dictionary.

The word in that sense has been given judicial interpretation. In Burgett v. Barrick, 25 Kan. 526, it is held that the language "capable of contracting," used in the local statute, was to be understood as " 'legally capable of contracting,' and not that a minor is mentally and physically capable of contracting." So the word may be applied to things impersonal as well, and thus to things capable of being imported, and, so applied, may signify things lawfully capable of importation. It was so applied in Re Henderson and City of Toronto, 29 Ontario Reports, 669, where it was held that a document not entitled to be registered was not an "instrument capable of registration."

[4] Stress is laid upon the words "brought into," as used in section 2809, as somehow interpretative of import, or imported. But it must be borne in mind that they qualify "merchandise," and merchandise gets its meaning from section 2766 (Comp. St. § 5462), accompanied with the restrictive words "capable of being imported." These expressions are found in the same title, and are to be construed in pari materia.

In United States v. Merriam et al., 26 Fed. Cas. 1237, 1239 (No. 15,759), in construing the language of section 4 of the act of July 18, 1866 (14 Stat. 179 [Comp. St. § 5785]), which reads, "that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any goods, wares, or merchandise, contrary to law," the court says:

"Now, to import, in its general signification, means to bring into the United States. Why, then, are these additional words, 'or bring' into the United States, used? They are either mere surplusage, or they mean something more

than what is included in the words 'to import,' according to their ordinary signification. To import goods, wares, and merchandise into the United States, in the connection in which the words are here used, evidently means an importation in the ordinary manner, so far as the means and manner of importation are concerned, but contrary to law. 'To bring' goods, etc., into the United States, in the connection in which the words are used, means the introduction of goods, etc., into the United States by any other means or in any other manner than that of importation proper, contrary to law."

This language as used has relation to the bringing in of dutiable articles contrary to law. The court, in United States v. Chesbrough (D. C.) 176 Fed. 778, 783, in consideration of section 3082, R. S. (Comp. St. § 5785), adopts this view, and concludes:

"These words in my opinion have a plain meaning, and call for no interpretation. They comprehend the bringing into this country of dutiable articles."

According to these cases, the words "import" and "bring in" are not synonymous, and their special bearing here is that they are to be construed with reference to the connection in which they are employed. The statutes under consideration were and are contained in a different title, and are unrelated to the subject-matter with which we are dealing. In the case of United States v. Caminata (D. C.) 194 Fed. 903, 904, wherein was involved the second section of the Opium Act of February 9, 1909, 35 Stat. 614 (section 8801, Comp. Stat.), the court expressly agreed with the argument of the United States attorney, wherein was used this language:

"This act is not a customs law, designed to avoid fraud upon the revenue, but is purely a prohibitory statute, absolutely forbidding the bringing into this country from abroad of an article deemed by Congress to be injurious to the health and morals of our people. The act has no relation to the customs system."

We do not think the language of the Attorney General (21 Ops. Attys. Gen. p. 94) is conclusive, wherein he says:

"The word 'merchandise' is used in different senses in different parts of our customs legislation. In Revised Statutes, §§ 2766 and 3111, it covers any tangible personal property. In sections 2795 and 3113 it means property imported into the country, whether for sale or not. In the act of 1875 it has a narrower meaning, but still includes all personal property not imported for the use or enjoyment of the importer himself."

[5] The learned Attorney General had not before him the exact question here involved, and his attention was perhaps not specifically called to the particular and peculiar language of section 2766. The comment is valuable, however, in that it subscribes to the interpretative principle that the meaning of the word must be sought for with respect to the especial sense in which it is used in the particular statute where it is found. It is a bootless task, therefore, to attempt to fix the signification of words and phrases by their use in totally unrelated statutes.

[6, 7] Our attention has been called, arguendo, to section 8801f, Comp. Stat., supra, as a legislative construction of the word "merchandise," and as to what should be included in the manifest. This statute was adopted at a much later date, and we should bear in mind that opium and its derivatives, except smoking opium, are subject to importation for medicinal purposes, and it is no doubt the intendment of sec-

tion 2809, R. S., that such merchandise should be included in the vessel's manifest. It is capable of being imported in the sense that its importation is not unlawful. Otherwise, it was competent for Congress to extend the provisions of section 2809 to require all opium, whether its importation were lawful or unlawful, to be shown on the vessel's manifest for the purpose of penalizing the vessel. Certainly Congress did not go further than to apply section 2809 in its enlarged sense to opium and its derivatives, and for the one purpose of penalizing the vessel, not its master.

From these considerations, we are led to the conclusion that it is the intendment of the statute here in review that the word "merchandise" shall comprise only such goods, wares, and chattels as may be lawfully brought into this country, and that the defendant was not legally subject to be penalized for not having included the opium—that is, smoking opium—in the vessel's manifest.

HUNT, Circuit Judge (dissenting). The statutes pertaining to entry of merchandise—Chapter 4, Collection of Duties on Imports—provide that no merchandise shall be brought into the United States from any foreign port in any vessel unless the master has on board a manifest containing certain specific information. Sections 2806–2808, R. S. U. S. (Comp. St. §§ 5503–5505). Section 2809 (Comp. St. § 5506) provides that—

"If any merchandise is brought into the United States in any vessel whatever from any foreign port without having such a manifest on board, or which shall not be included or described in the manifest, or shall not agree therewith, the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest; and all such merchandise not included in the manifest belonging or consigned to the master, mate, officers, or crew of such vessel, shall be forfeited."

Section 2766, R. S. U. S. (section 5462, U. S. Comp. St. 1916), provides as follows:

"The word 'merchandise,' as used in this title, may include goods, wares, and chattels of every description capable of being imported."

The controlling statute which provides for liability of the master to the penalty is section 2809. The terms of that section seem to us plainly to refer to merchandise "brought" into the United States and not included in the manifest.

I cannot find substantial ground upon which to hold that goods of every description "capable of being imported" shall be only such goods and wares and chattels as may be lawfully entered through the customs houses, or to which is attached the right of the United States to assess and collect duties. The fact that the goods brought in may be prohibited from being entered does not relieve the master from including them in the manifest, as required by sections 2806–2808. "Capable" of being imported means, under the terms of section 2766, such goods and chattels as can be brought over—not lawfully brought over and entered, but such as can physically be brought. Section 2766 is to be read, I think, not as one of limitation as to the right to import under the law, nor as defining what may be lawfully entered in the customs houses,

but as a comprehensive inclusion of all goods that it is possible to transport from another country into this. There is nothing tangible in the way of goods, wares, and chattels which may not be brought within the term "merchandise," whether intended for trade or not. In 21 Ops. Attys. Gen. p. 94, Mr. Olney held that the word "merchandise" was used in different senses in different parts of the customs laws. He said:

"In Revised Statutes, §§ 2766 and 3111, it covers any tangible personal property. In sections 2795 and 3113 it means property imported into the country, whether for sale or not. In the act of 1895 it has a narrower meaning, but still includes all personal property not imported for the use or enjoyment of the importer himself."

Suppose a cargo of liquor is brought over, or a quantity of aigrette or osprey plumes, or skins of wild birds, none of which may lawfully be brought into the country; would not the statute defining merchandise include them? Or must the collectors of customs hold that, because those articles are contraband, they need not be put upon the manifest; that merely because they cannot lawfully be imported they are not "merchandise," hence cannot be brought into the country, and the master of the ship who brings them, and has not included them in the manifest, is not liable under section 2809? Such a construction seems to me to be too restrictive of the words of the statute.

In section 8800, Comp. St. 1918, Congress provided that after April 1, 1909 (Act Jan. 17, 1914):

"It shall be unlawful to import into the United States opium in any form or any preparation or derivative thereof" except "for medicinal purposes."

It was also provided by section 2 of the act that if any person shall fraudulently or unlawfully "import or bring into the United States, or assist in so doing, any opium or any preparation or derivative thereof contrary to law," he shall be punished and the opium shall be forfeited. And again in section 3 of the act (Comp. St. § 8801a) it was provided that all smoking opium or opium prepared for smoking found within the United States on and after July 1, 1913, shall be presumed "to have been imported after April 1, 1909." In these sections it seems clear that "imported" is used in its ordinary sense. In volume 27 of the Opinions of the Attorneys General, p. 440, the question arose whether, under the general statutes (sections 2962, 2971, 2976 and 3005, R. S. U. S. [Comp. St. §§ 5646, 5657, 5662, 5690]) regulating depositing in bond and transshipment of "merchandise" smoking opium brought from a foreign country and destined to another foreign country could be entered for warehousing and for immediate exportation by another ship. The ruling was that under the general customs law "the entering of merchandise for immediate exportation and without intent that it shall enter the commerce of the country is not an importation," and that since smoking opium was not subject to the payment of duties, and the bringing of opium into port by one ship for immediate exportation by another is not importation, its transfer from one vessel to another could be lawfully made. No question seems to have been made whether smoking opium was or was not merchandise.

In United States v. Chesbrough (D. C.) 176 Fed. 778, defendant was indicted for violating section 3082, R. S. U. S. (Comp. St. § 5785),

which provides that, if any person shall fraudulently "import or bring into the United States * * * any merchandise, contrary to law," such merchandise shall be forfeited and the offender shall be punished. It was contended that the words "import or bring" and "merchandise," as used in section 3082, exclude articles brought in as baggage, and the argument was that the importation of merchandise contrary to law, which was penalized by the section, is the importation of general merchandise as distinguished from baggage. But it was held that the limitation sought to be placed upon the word "merchandise" was entirely too restricted, and that the proper construction was to give to the word "merchandise" a natural, plain, and ordinary signification. It was also contended that the word "import" should be given a technical rather than an ordinary meaning, but it was held that a technical definition could not control in the case of dutiable merchandise brought in as personal baggage. The court said that the words "import or bring" were not necessarily synonymous, and that Congress, having used both words, intended to give the broader scope to the statute, and to comprehend the bringing into the country of dutiable articles. The reasoning of the case is applicable to the words used in section 2809, that if any merchandise is "brought" into the United States. I think the broader object of the statute is attained by this view.

In United States v. Caminati (D. C.) 194 Fed. 903, defendant was prosecuted for smuggling smoking opium. The court cited the Act of Congress of February 9, 1909, c. 100, § 1, 35 Stat. 614 (Comp. St. § 8800), which prohibits the importation of opium into the United States except for medicinal purposes, and section 2, which makes such importation penal, and held that the phrase "import or bring," as used in section 3082, may or may not be synonymous, according to the legislative purpose for which they are used, but that the word "import" should not be limited to the actual landing of goods, but should be understood to have been used in the light of the legislative purpose, which was to prohibit the bringing of opium into the country, rather than to provide for the violation of a customs law designed to avoid fraud upon the revenue.

Again, section 8801f, Comp. St. 1918 (section 8 of the Act of January 17, 1914), provides that whenever opium is found upon any vessel arriving in port of the United States, "which is not shown upon the vessel's manifest, as is provided by sections 2806 and 2807 of the Revised Statutes, such vessels shall be liable for the penalty and forfeiture prescribed in section 2809 of the Revised Statutes." This section confirms the opinion that the word "merchandise," as used in section 2809, includes opium, even though denied entry. The rulings of the Treasury Department define opium as covering all forms of opium known to the trade, including smoking opium; and the Secretary of the Treasury (Treas. Dec. No. 32083) has made provision for cases where prohibited opium is found on board a vessel "not manifested," by directing that in such case the fine should be paid, as it does not fall within the provision of section 2810 of the Revised Statutes (Comp. St. § 5507). Section 2810 has reference to instances where part of the cargo without proper manifest is unshipped, except such as is accounted for

by the master, and where the manifests have been lost or mislaid without fraud, or are incorrect by mistake. In such an event no forfeiture or penalty shall be incurred under section 2809. In the Customs Regulations of 1915, article 97, section 2809 is quoted, and it is advised that, in all cases where opium is found on board a ship not manifested, the fine specified in section 2809 shall be imposed.

With respect to the value of the smoking opium, the rulings of the Treasury Department provide that, for the purpose of assessing the fine under section 2809, supra, the value of the prohibited opium is the foreign value. Treas. Dec. No. 32083, December, 1911. In the present instance the value of $6,400 was fixed by the customs officers as based upon the statements of the defendant below, who said that he had paid that sum for the opium in British Columbia. In a case of this character this was sufficient evidence of the value.

For these reasons, I believe judgment should be reversed, and the case remanded for a new trial.