## WASSON v. MILLSAP et al.

**Fraudulent Conveyance:** HUSBAND TO WIFE: CONSIDERATION: WIFE'S KNOWLEDGE. A wife had conveyed land to her husband under a parol agreement, as they testified, that he would, at any time when requested by her, deed back the property, or any other property they might have. Afterwards, and, as they testified, in consideration of this agreement, he conveyed to her the property which, in this action, a creditor of the husband seeks to subject to the payment of his debt. The debt had been contracted prior to the conveyance, and it was for money collected and misappropriated by him without plaintiff's knowledge. The evidence (see opinion) shows that the husband's purpose in making the conveyance was to delay and defeat his creditors, and that the wife had knowledge of that purpose. *Held* that she could not hold the property as against plaintiff's claim.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, Judge.

FILED, MAY 31, 1889.

ACTION by equitable proceeding wherein the plaintiff asks to subject certain real estate, the title to which is in defendant Melissa Millsap, to the payment of a judgment against the defendant Albert Millsap. Decree was entered in the district court in favor of the plaintiff, and defendants appeal.

The plaintiff claims that Albert Millsap is the real owner of the property described, and that the title thereto was made to his wife, the defendant Melissa Millsap, with intent to defraud the plaintiff and other creditors of said Albert Millsap. The defendants deny any intent to defraud, and claim that the property was conveyed to Mrs. Millsap in pursuance of a previous agreement, and for valuable consideration. It appears from the testimony, and with but little, if any, conflict, that prior to September 1, 1885, the plaintiff employed Albert Millsap to sell certain patent-right territory, and on the first day of September, 1885, Albert Millsap sold the state of Pennsylvania, receiving therefor twelve

hundred dollars; that he failed to report said sale to plaintiff, and plaintiff did not learn thereof until the latter part of March, 1886, whereupon he instituted a suit, and afterwards recovered judgment against Albert Millsap for twelve hundred dollars. The defendants were married in December, 1877, and soon thereafter Mrs. Millsap conveyed to her husband a certain quarter section of land which she owned by gift from her father, and which was afterwards sold and conveyed in connection with an adjoining eighty acres, owned by Mr. Millsap himself. The proceeds of this sale were invested in other real estate in the name of Albert Millsap, and otherwise appropriated by him. On October 6, 1885, and February 6, 1886, Mr. Millsap conveyed to his wife certain real estate, which was afterwards so exchanged as that Mrs. Millsap received the title to the property in question. Mrs. Millsap testifies that she received the conveyances from her husband in pursuance of an understanding between them at the time she deeded her farm to him. She says: "This property (her farm) was afterwards deeded to my husband for convenience, as people were making remarks about the property being in my name, and I thought it more convenient to have it changed. At the time I deeded him this land it was so done with the understanding that at any time I requested him to deed this property or any other property that we might have, be it much or little, back to me, he would do so." Mr. Millsap states the agreement in substantially the same words.

*Winslow & Varnum*, for appellants.

*Kauffman & Guernsey* and *E. S. Wishard*, for appellee.

GIVEN, C. J.—I. The controlling question in this case is whether the conveyances by Albert Millsap to his wife, by means of which she came into the title to the property in question, were with fraudulent intent to defeat the collection of the plaintiff's judgment, and, if

so, whether Mrs. Millsap participated in that intent, or had notice of such facts as would have put her upon inquiry that would have led to a knowledge of such fraudulent purpose. The right of husband and wife to contract with each other with respect to the separate property of either is well established in this state. There is no question but that, where by valid agreement either becomes the debtor of the other, the law will uphold the agreement. The rights of parties where husband or wife makes advancements to the other is clearly defined in *Hanson v. Manley*, 72 Iowa, 48. This is not a question of authority to contract, nor of advancements, but, as already stated, the question is whether the conveyances under notice were made and received with intent to defraud the plaintiff. It is claimed on behalf of defendants that these conveyances were executed and delivered in pursuance of the verbal agreement as testified to by them, and that, the agreement being executed, it is binding upon all parties. By the agreement, as stated, Albert Millsap held the title to all the property realized from the proceeds of the sale of Mrs. Millsap's farm, as well as of all other real estate to which he acquired title; thus giving him such financial standing as would be inferred from the ownership of the property in his name. Mr. Millsap owned, and, indeed, as is shown by the testimony, did receive credit on the faith of his being the owner of, the real estate standing in his name. By the agreement as stated he was liable to be divested of all his property, "be it much or little," at any time, at the instance of his wife, and without any notice whatever to his creditors that she claimed any such right against the property in his name. Mr. Millsap incurred the liability for which judgment was entered in favor of the plaintiff in September, and concealed the fact from the plaintiff, so that he did not discover it until the following March. After incurring this liability Mr. Millsap executed the deeds to his wife without other consideration than that embraced in the parol agreement. At the time of executing one of them he said to Mr. McElroy, who drew the deed, "that he

was in the patent-right business, dealing with various men, and did not know but that he might have some trouble, and he wanted to execute the deed to that property to his wife in order to be safe if he should have trouble; that he did not want to record it unless it should be necessary." This testimony was objected to on the grounds that it was a confidential communication to McElroy as an attorney. We do not think the relation of attorney and client existed. McElroy was acting simply as a scrivener in preparing the deed. Mr. Millsap's offer of one hundred and fifty dollars in satisfaction of the twelve hundred dollars, when pressed for payment, with the remark : "You had better take that because it is more than you will ever get," his declarations to McElroy, his concealment of the sale of Pennsylvania, the times at which he executed the deeds, and other circumstances appearing in the proofs, leave no doubt in our minds but that he made the conveyances with intent to defraud the plaintiff in the collection of his judgment. In view of the relation of the defendants, the kind of agreement upon which Mrs. Millsap claims the right to accept these conveyances, the time at which they were made, and all the attending circumstances, we think the inference is fully warranted that Mrs. Millsap knew of the fraudulent purpose for which the deeds were being made to her by her husband. This case is distinguishable from other cases in which this court has recognized the right of husband and wife to contract the relation of debtor and creditor. We are of the opinion that the agreement in pursuance of which these conveyances were made is void as to the creditors of Albert Millsap, and that the title to the property in question was vested in Mrs. Millsap, with intent to defraud the plaintiff in the collection of his judgment. The decree of the district court is therefore

AFFIRMED.