WILLIAM ISEMINGER, Appellant, v. A. S. CRISWELL, Defendant, and ELDORA T. CRISWELL, Appellee, and Two Other Cases.

Husband and Wife: DEBTOR AND CREDITOR. Where a husband takes title in himself to land, bought with the wife's money, but 1 gives her no note for the amount so used, and makes no promise to repay the same, the relation of creditor and debtor does not arise, so as to validate a subsequent deed of the land by the husband to the wife.

EVIDENCE OF TRUST RELATION. In an action to set aside a deed by a husband to a wife, as in fraud of creditors, the wife claimed that the land had been originally paid for with her money, and that the title had been taken in the husband, and that a trust relation arose, creating in her an equitable interest in the land. It was shown that, prior to the purchase of the land in suit, land 2 belonging to the wife had been turned into money, but such money was not directly traced as the purchase price of the land in suit; and it also appeared that, prior to such purchase, the husband had received money from the sale of his separate lands, had purchased drafts therewith, and had cashed the drafts on the day that the land in suit was purchased. Held, that the evidence was insufficient to show an equitable interest in the wife.

ESTOPPEL AGAINST CREDITORS. Where the wife allows the husband
to take title to land purchased with her money, and to contract
debts on the strength of the title, without openly claiming the
same or notifying his creditors that she claims an equitable inter-
est therein, she is estopped to claim such an interest as against
creditors of the husband who dealt with him on the strength of
his apparent title to the land.

*Appeal from Crawford District Court.*—HON. C. D.
GOLDSMITH, Judge.

### WEDNESDAY, MAY 20, 1896.

CREDITORS' bill, to subject certain real estate, the
legal title to which is in Eldora T. Criswell, to the
payment of a judgment held by plaintiff, against A.
S. Criswell. Trial to the court. Decree for defend-
ants, and plaintiff appeals.—*Reversed.*

*Harding & Harding, J. P. Conner,* and *Shaw &
Kuehnle* for appellant.

*P. E. C. Lally* for appellee Eldora T. Criswell.

DEEMER, J.—The land, which is the subject of this
suit, consists of one hundred and twenty acres, lying
in Crawford county. It was purchased of one Mon-
tague, by the defendant, A. S. Criswell, March 17,
1887. A. S. Criswell, at the time he purchased the
land, was a farmer, but he shortly afterward concluded
to embark in the mercantile business. At this he was
a failure, and, becoming heavily involved, he trans-
ferred his stock of goods to a clerk, who had been in
his employ, assigned his books of account and other
choses in action, and on the ninth day of October,
1893, conveyed the Montague land to his wife, his
co-defendant in this case. At the time he made the
conveyance, he was indebted to the plaintiff and vari-
ous other parties, in considerable sums. The expressed
consideration for the deed was, four thousand dollars;

but, as a matter of fact, there was no present consideration therefor. It is claimed by the plaintiff, that the deed was wholly voluntary, and that it was made with intent to hinder, delay, and defraud the creditors of the husband, and particularly this plaintiff, and that it was and is, void. The appellee, Eldora T. Criswell, denied that the deed was without consideration, and denied the alleged fraud. She further pleaded that the conveyance to her was in execution of a trust, growing out of certain transactions between herself and husband, during the early years of their married life. She alleged, that she furnished her husband the money with which the land was purchased, intending that the title should be taken in her name, but that her husband, unmindful of his agreement, took the title in his own name; that as soon as she discovered the land was not in her name, which was some time after the deed was taken, "she persistently and incessantly demanded of her husband that he convey the real estate to her, and has at all times claimed it as her own;" that the deed was finally made in accordance with her demands, and placed the legal title where it, in fact, belonged. To these claims of the defendant, Eldora Criswell, the plaintiff pleaded an estoppel, growing out of the fact that she permitted the title to remain in her husband, and allowed him to gain and obtain credit on the strength of his apparent ownership of the land. The district court found that the conveyance was in good faith, for a valid consideration, and without fraud or fraudulent intent, and was either in payment or satisfaction of a valid obligation, owing to her by her husband, or a mere formal conveyance to her of a title which, in equity and good conscience, she absolutely owned. The appeal is from this decree.

It becomes necessary to determine, first, whether the conveyance was made in consideration of a valid

obligation on the part of the husband to the appellee. It appears, from the evidence, that, when appellee was married, she had one thousand four hundred dollars, which she received from her father's estate. Of this amount, one thousand dollars was invested in a farm in Scott county, and the remainder was used for the support of the family, and in the purchase of farm implements. Afterwards, the land in Scott county was sold, and the Montague land, in Crawford county, was purchased. It is claimed by appellee that the money paid for the Crawford county land came from the sale of Scott county land; while appellant contends that the money which paid for the land in dispute, came from lands in Scott county, owned by the husband. We pass this dispute now, to consider the question whether the relation of debtor and creditor existed between the appellee and her husband. We have read and re-read the record, to discover any promise on the part of A. S. Criswell, to repay the money, and find that there is no evidence of any such agreement. No notes were at any time given, and the claim of appellee rests solely upon the proposition that she furnished the money with which the land was purchased. The appellee said, when on the witness stand: "I wanted the place. I never asked him for a note representing the amount that he owed me. He never said anything about paying me any money on account of it." She further said: "I thought I ought to have the title to the land because I had the money, and my money bought it." "I wanted it because I paid for it, and I thought I ought to have it that way, and I told my husband I wanted it in my name." "I always wanted that land, and always claimed it. It was not in my name, but I always wanted it and always claimed it." "It was my money bought it, and I always wanted it, and thought I ought to have it by rights as mine.

When we were married we did not have anything, only what was mine, and, of course, I thought whatever we got ought to be mine." "I wanted this land when we first came to this county, and wanted him to give me a deed to it, and I could not make him do it." "I received this deed on the evening of October 9th, from my husband. He made the deed for the reason I always wanted him to make a deed to it, and spoke about it different times; and this time he and his brother got into trouble, and he was security for his brother, and I thought it was time we had to pay somebody else's debts, why I wanted it for mine." "I insisted upon the land being deeded to me, because it by rights belonged to me." This is all the evidence showing, or tending to show, the relation of debtor and creditor between the appellee and her husband, and it is manifest that it is not sufficient to sustain the conveyance of the land. We have frequently held that while a husband may discharge a *bona fide* indebtedness to his wife, by a conveyance of property to her, still such transactions cannot be sustained as against creditors of the husband, without satisfactory evidence of actual contractual relations existing between them with reference to her separate property. *Romans v. Maddux*, 77 Iowa, 203 (41 N. W. Rep. 763); *Moore v. Orman*, 56 Iowa, 39 (8 N. W. Rep. 689); *Hanson v. Manley*, 72 Iowa, 48 (33 N. W. Rep. 357); *Wasson v. Millsap*, 77 Iowa, 762 (42 N. W. Rep. 528).

We now are brought to a consideration of the other question in the case, to-wit: Was the wife the beneficial owner of the land at the time the conveyance was made, and was the title transferred to her in execution of a trust implied by law by reason of the wife's having furnished the consideration for the property? The presumption is that the husband was the equitable as well as the legal

owner of the land, for the title stood in his name, and no declaration of trust appeared in the conveyance. The burden was and is, therefore, upon the appellee to establish her claim that it was her money which purchased the Crawford county land, and that it was the intention of the parties that she should have the beneficial interest therein; and this she must do by clear and satisfactory evidence. Although, in the view we take of the case, it is not necessary to determine this question, we may observe in passing that we entertain grave doubts of the sufficiency of the evidence to establish the appellee's claims. It is established beyond controversy that A. S. Criswell sold some land which he individually owned in Scott county, and received two thousand five hundred dollars of the purchase price, March 10, 1887. On the same day, he purchased two drafts, for the sums of two thousand four hundred dollars and six hundred dollars, respectively. He had in the previous December, received one thousand dollars from the sale of his land, and was not compelled to resort to any of the money received from the Scott county lands, in which appellee claimed an interest and which had been sold the year before. So that it is quite as likely that these drafts represented the money arising from the sale of his own land as that in which appellee claimed an interest. These drafts were all cashed by A. S. Criswell, on the seventeenth day of March, 1887, the very day on which he purchased the Montague land. Now, although there is no direct evidence that Montague received these drafts, yet the appellee does not show, that it was the money arising from the sale of any other land, that was paid to Montague. The husband, who could have set this matter at rest, was not used as a witness, and the appellee testifies, that she "thinks—"guesses"—it was money from the Scott county land, in which she

claimed an interest, that was paid for the Montague land. The money from this Scott county land is not traced with sufficient certainty to justify a declaration of a trust in the Crawford county land.

But, aside from all this, it clearly appears that the appellant believed when he loaned the defendant, A. S. Criswell, the money, which loan was the basis of his judgment, that he (the husband) owned the land, and that, if he had had any notice or knowledge of appellee's equitable claim therein, he would not have loaned the same. Each of the other judgment creditors whose suits are to follow this one, also testified to the same thing. Now, it appears from the record that A. S. Criswell never at any time, until he made the deed to his wife, the appellee herein, acknowledged any beneficial claim of his wife in the land. The appellee said, when giving her testimony, that she wanted the land when she first came to Crawford county; "that she wanted her husband to give her a deed for it; but that she could not make him do it." She knew within a short time after the conveyance was made that the title was in the name of her husband, and that the records showed that he was the equitable as well as the legal owner. She also knew that he was of a speculative turn of mind, and was engaged in operations on the board of trade. She also knew that he did not acknowledge the trust she claimed, and that he would not make her a conveyance; and yet she stands idly by, knowing full well that creditors might be deceived and would give credit to her husband on the strength of his apparent financial ability, and, without bringing suit or doing anything to notify persons dealing with her husband of her claims, allows him to become involved to such an extent as that he is forced to suspend, and at the last moment. when everything seems to be slipping away from them, she

accepts the conveyance, knowing at the time that suits had been commenced against her husband, which in a few days would ripen into judgments, and absorb the land. Under such a state of facts, it would be most inequitable to permit the appellee to hold the land. Her acquiescence and laches, as well as her implied consent to the ostensible ownership of the land by her husband, ought to estop her from now claiming title. The case is in its facts quite like that of *Porter v. Goble*, 88 Iowa, 565 (55 N. W. Rep. 530), where it was held that the grantee was estopped from claiming title. See, also, *Wasson v. Millsap, supra*, and *Langford v. Thurlby*, 60 Iowa, 107 (14 N. W. Rep. 135), *Hendershott v. Henry*, 63 Iowa, 744 (19 N. W. Rep. 665), *Bank v. Webster*, 76 Iowa, 381 (41 N. W. Rep. 47), *Lindley v. Martindale*, 78 Iowa, 379 (43 N. W. Rep. 233). In principle, it is not unlike that of *Goll & Frank Co. v. Miller*, 87 Iowa, 426 (54 N. W. Rep. 443), and other like cases. See, also, *Bank v. Hamilton*, 34 N. J. Eq. 162; *Besson v. Eveland*, 26 N. J. Eq. 472; *Humes v. Scruggs*, 94 U. S. 27; *Savage v. Murphy*, 34 N. Y. 508; *Sexton v. Wheaton*, 8 Wheat. 229; Bump. Fraud. Conv. (3d Ed.) p. 311; *Moyer v. Adams*, 9 Biss. 394, (2 Fed. Rep. 182).

We reach the conclusion that the conveyance to the wife was fraudulent, and that it should be set aside.

By agreement of counsel, the cases of *First National Bank of Charter Oak*, appellant, *v. A. S. Criswell and Eldora T. Criswell*, appellee, and *Romans Bros. & Co.*, appellants, *v. The Same Defendants and Appellee*, are submitted upon the same record and arguments as the case at bar, and it follows that each and all of these cases are REVERSED.