STATE OF IOWA, Appellee, v. THEODORE WALL, Appellant.

No. 42220.

APRIL 3, 1934.

Charles W. Bowers, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and Carl A. Burkman, County Attorney, and Francis J. Kuble, Assistant County Attorney, for appellee.

EVANS, J.—█ The indictment was as follows:

"The Grand Jury of the County of Polk, in the State of Iowa, accuse Theodore Wall of Obtaining Money by False Pretenses as defined in section 13045 of the 1931 Code of Iowa, and charge that Theodore Wall obtained from the State of Iowa and more particularly from the Custodian of the State of Iowa, the Treasurer of the State of Iowa, money and property by means of false pretenses."

The bill of particulars furnished was as follows:

"On April 12, 1933, the County Attorney filed the following Bill of Particulars:

"Comes now the State of Iowa and by way of a Bill of Particulars alleges as follows:

"That said defendant, Theodore Wall, made certain false and fraudulent representations in that he stated to the Treasurer of State of the State of Iowa or his duly authorized agent thereof, in writing on the 3d day of November, 1932, that the said J. C. Blunk Construction Company or the Blunk Construction Company had paid a gasoline license fee on 48,172 gallons of gasoline during the year 1930, and that he claimed a return of a three cent license fee per gallon on 46,763 gallons of gasoline used by the Blunk construction Company during the year 1930, claiming that the said gasoline was used for road construction in cities, towns, and highways closed to public travel, all of them in Iowa. That said claim was not previously made because of departmental rulings, when in truth and in fact the said defendant, Theodore Wall, knew that the Blunk Construction Company had not paid the legal gasoline license fee on the amount of gasoline set out in his written application to the Treasurer of State and that the said Theodore Wall knew that said application and representations were false and fraudulent.

"That a copy of said written representation to the Treasurer of State made and filed by the defendant, Theodore Wall, is attached hereto, marked Exhibit 'A' and made a part of this Bill of Particulars.

"Carl A. Burkman,
"County Attorney.

"Exhibit 'A'

"1930

"When Properly Completed, Mail to Ray E. Johnson, Treasurer of State, Des Moines, Iowa.

"APPLICATION FOR REFUND OF LICENSE FEE PAID ON MOTOR VEHICLE FUEL PURCHASED

"Note: Read the Instructions Before Making Out your Claim.

"To the Treasurer of the State of Iowa, Des Moines.

"Under the provisions of chapter 251-A1, Code 1927, as amended, I hereby make application for reimbursement for the amount of license fee paid by me on Motor Vehicle Fuel purchased as indicated:

"1. Total number of gallons of Motor Vehicle Fuel (as shown by attached original invoices)                48,172

"2. Total number of gallons of Motor Vehicle Fuel used for vehicles upon the public highway * * *    —— 10 ——

"3. Number of gallons of Motor Vehicle Fuel on which reimbursement of license fee is claimed.                46,763

"4. Purpose for which Motor Vehicle Fuel for which reimbursement is claimed was used (if in tractor, explain for what tractor was used) Road Construction—cities, towns and highways closed to public travel—all in Iowa; claim not previously made because of adverse departmental rulings.

"5. Amount of reimbursement claimed (at three cents per gallon)                $1,402.89

"6. Have you paid for Motor Vehicle Fuel covered by the attached invoices, including license fee? (Answer yes or no)    Yes

"I, Theodore Wall being duly sworn on oath state, that the above is a true and correct statement and that the Motor Vehicle Fuel purchased and covered by the attached invoices has been paid for by me, including license fee; that the Motor Vehicle Fuel covered by invoices accompanying this claim has been entirely consumed; that reimbursement has not been received for the license fee paid on any Motor Vehicle Fuel included in this application, nor has application therefor been previously filed.

"Signature of Claimant
    "Blunk Construction Company

"Street or R. F. D. No.  (GIVE
"[Signed]  By Theodore Wall Atty.  YOUR
"Post Office Address  POST-OFFICE
  "822 Southern Surety Bldg.  ADDRESS)
"Write Name and Address Plainly)
"(Duly sworn to)."

The form of the indictment was challenged on many grounds and by various motions and a demurrer. We shall consider first the most perplexing of the questions thereby raised. By a demurrer before trial and by motion for a directed verdict, at the close of the evidence, the defendant challenged the sufficiency of the indictment in that it purported to be founded upon section 13045; whereas upon the statement of the bill of particulars it should be founded upon section 5093-a8. This contention of the defendant was denied and overruled at all stages of the trial. Section 13045 is as follows:

"13045. If any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtain from another any money, goods, or other property, or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be imprisoned in the penitentiary not more than seven years, or be fined not exceeding five hundred dollars, or be imprisoned in the county jail not exceeding one year, or be punished by both such fine and imprisonment."

Section 5093-a8 is a part of chapter 251-A1 of the Code of 1931. We shall set forth this section herein, and for the purpose of convenient discussion will separate it into two parts. It is as follows:  •

"1. Any person who shall buy or use any motor vehicle fuel for the purpose of operating or propelling stationary gas engines, tractors used for agricultural purposes, motor boats, airplanes or aircraft, motor vehicles, trucks and tractors owned and operated by the state of Iowa, or by a municipality for municipal purposes within the state, or who shall purchase or use any motor vehicle fuel for cleaning or dyeing, or for any other commercial use except for propelling motor vehicles operated in whole or in part upon the public highways of the state or upon the streets of any city or town in the state, shall be reimbursed and repaid the amount of such license

fee paid by him, upon presenting to the treasurer of state a statement accompanied by the original invoices showing such purchase which statement shall set forth the total amount of motor vehicle fuel so purchased, paid for and used by such consumer other than for propelling motor vehicles operated or intended to be operated in whole or in part upon any of the public highways of this state or upon the streets of any city or town of this state and the treasurer of state shall, upon the presentation of such invoice, cause to be repaid from the funds collected hereunder, the amount of such license fee paid by such consumer on motor vehicle fuel used for purposes other than propelling motor vehicles as hereinbefore provided.

"2. All applications for refunds or reimbursements as provided for in this chapter shall be filed with the treasurer of state on blank forms provided by him for that purpose within ninety days after the date on which such motor vehicle fuel shall have been purchased as shown by the invoice. Any person, firm, or corporation who shall make any false statement in connection with an application for the refund of any money or license fee as herein provided or who shall collect or cause to be repaid to him or any person, any such fees, without being entitled to the same under the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not to exceed one thousand dollars."

It will be noted that part No. 1 discloses the privilege granted by the statute; and part No. 2 imposes the penalties which attach to a violation of said privilege. This section has been wholly ignored by the state in this prosecution. The question at this point is, May the state so ignore it? The contention of the defendant is that, if he be guilty of the charge defined in the Bill of Particulars, then he is punishable under this section and not otherwise.

The contention for the state is that section 13045 is all-inclusive and applies to any and every case wherein the defendant is charged with obtaining money upon false pretenses. Each contention has its plausibility. Nor have we hitherto encountered the dilemma thus presented. Section 13045 is an old statute, and has kept its vigil more than fifty years. Section 5093-a8 is the product of the modern day of highways, vehicles, and motor power. The old section may be termed a *generic* statute, and the new one, a *specific* one. There is in vogue a general rule of interpretation that, as between con-

flicting statutes, the earlier must yield to the later, and the generic to the specific. In this case there is no divergence between these statutes except in the extent of penalty, which may be imposed upon the wrongdoer. The older statute permits a maximum penalty of seven years in the penitentiary. This maximum applies to all cases, punishable thereunder. The newer statute deals with one specific subject-matter and with one specific class of fraudulent pretense. As to the particular class of offense described therein, it expressly prohibits a greater penalty than a fine of $1,000. This is the significance, and the only significance, of the variance between these statutes. It is the argument for the state that the unlawful acts charged against the defendant transcend the limitations of section 5093-a8, and that therefore they are necessarily punishable under section 13045. The argument for the defendant is that, inasmuch as the defendant has been prosecuted under the wrong statute, no valid judgment can be entered against him; and that the state has no other recourse than to dismiss its prosecution. In support of this contention, he relies upon our holding in State v. Marshall, 202 Iowa 954, 211 N. W. 252.

As against the state, it seems to us that the acts charged against the defendant in the bill of particulars are identical with those defined in section 5093-a8. As against the defendant, we have to say also that our holding in State v. Marshall is too short-armed to reach him. In the Marshall case we held that the offense for which Marshall was prosecuted was defined in section 13047, Code, 1924 (*now changed*), and not otherwise; that by the terms of section 13047, *as it then existed,* the penalty was limited to a maximum period of thirty days in the county jail; that the original jurisdiction over such an offense was in the justice court; and that the offense was not *indictable* at all. It followed necessarily in that case that the prosecution of the offense by *indictment* was without jurisdiction.

The question involved herein is therefore more perplexing than it was in the Marshall case. The offense charged against this defendant *is indictable*. Except for the variance in the maximum penalty, it could work no prejudice to the defendant under whichever section he should be prosecuted. The prosecution inserted into the indictment the words "as defined in section 13045 of the 1931 Code of Iowa". These words were wholly unnecessary to a good indictment. They could be omitted or eliminated without legal effect upon the validity or the interpretation of the indictment. If they had

been omitted, the prosecution could have proceeded precisely as it did proceed. The charge would be provable by the same testimony that was actually introduced on the trial. The rules of law were the same. The submission could have been had upon the same instructions without prejudice to the defendant. Up to this point no one could say under which statute the prosecution was being pressed. In such a case, if the prosecutor had deemed himself as proceeding under section 13045, and if on the other hand the defendant deemed himself as being prosecuted under section 5093-a8, such variance of mental attitude could have no possible effect upon the adequacy of the prosecution or the fairness of the trial. The later statute was valid; the earlier statute was not repealed. Nevertheless the scope of its operation was reduced to the extent of reducing the maximum punishment, which might be imposed upon this particular class of fraud. In no other respect did section 5093-a8 change the procedure to be had under section 13045.

If we are right in our analysis up to this point, then the insertion in the indictment of the words "as defined in section 13045 of the 1931 Code of Iowa" was wholly without legal effect. They may be disregarded as mere surplusage. The logical result is that, unless there be other error in the record, the defendant suffered no prejudicial error in the trial, up to the point of the rendering of the sentence and judgment. His sole valid complaint is that, in fixing the penalty, the court should have been obedient to the prohibition contained in section 5093-a8, and should have confined the extent of the punishment to the maximum therein provided.

II. It remains to consider other features of the record. The defendant has assigned and argued a large number of errors. He has failed to present a record requisite for their full consideration. Approximately thirty exhibits were put in evidence upon the trial. Much of the controversy on the trial was over the exhibits and their contents. Nearly every important witness testified with an exhibit in his hand, which was finally introduced in evidence over the objection of the defendant. Not one of these exhibits is included in the abstract. On the last page of his index the defendant has given a list thereof by number only. Most of the assignments of error are founded upon one or more of these exhibits. On the other hand, the ground of affirmance asserted by the state is likewise founded on one or more of these exhibits. This is true of his Exhibits 3, 4, 5, 16, 16a, 17, 18, 19, 20, 21, 22, 23, and 24.

From a remark contained in one of the briefs we infer that Exhibit 3 is identical with Exhibit A, which latter is contained in the record. We cannot properly review the rulings of the court concerning these exhibits without having their contents before us. This state of the record renders it impracticable for us to engage in extended discussion of the detailed points raised by the defendant. We have read the record with great care and have indulged in fair inferences as to the contents of absent exhibits to the best of our ability. The fighting question goes to the sufficiency of the evidence. No evidence was introduced by the defense. The evidence of the state in support of the charge is very persuasive, and is quite abundant to support the verdict. We have fully considered the assignments of error and the argument in their support. Save as set forth in the first division hereof, we find nothing that merits more detailed discussion. For the reason indicated in the first division hereof, the judgment below will be reversed, and the cause remanded to the district court for judgment to be entered consistent with the provisions of section 5093-a8.—Reversed and remanded.

CLAUSSEN, C. J., and KINDIG, STEVENS, and ALBERT, JJ., concur.