STATE OF IOWA, Appellee, v. W. C. KIRKPATRICK, Appellant.

No. 42838.

OCTOBER 23, 1935.

REHEARING DENIED FEBRUARY 15, 1936.

Carlos W. Goltz, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Assistant Attorney General, and M. E. Rawlings, County Attorney, for appellee.

PARSONS, J.—The defendant, appellant, was indicted August 4, 1934, by the grand jury of Woodbury county, Iowa, for unlawfully and feloniously uttering of four $1,000 bonds of the city of Omaha, Neb., bearing 4½ per cent, and payable in 1945. The county attorney and his assistant prosecuted the case, and attorney Lafe Bond and an attorney named Strong appeared for the defendant, Strong withdrawing after making a few objections. Carlos Goltz, an attorney, appeared October 13, for the defendant, after the verdict was rendered. The jury returned a verdict of "Guilty" on September 26, 1934, saying, "We, the jury, find the defendant W. C. Kirkpatrick guilty of the crime of uttering a counterfeit public instrument as charged in the indictment."

The defendant filed first, October 3, a motion for new trial; second, October 13, exceptions to instructions; third, October 18, motion in arrest of judgment and for new trial. None of these were within the statutory time, and the abstract of record in this case fails to show the filing time of any one of these instruments. An amendment to the abstract shows that all of the instruments were filed after the statutory period for filing same, October 1, 1934.

The state filed motion to strike these various defense motions. The court had a hearing on these various matters; took testimony in which hearing attorney Bond was a witness, and he said he assumed the granting of extension of time in which to render judgment carried with it the right of filing motions or exceptions to the court's instructions, and that he was merely mistaken as to the provisions of the law with respect to that, and that he had no understanding with a representative of the county attorney's office, or the court, which led him to arrive at that conclusion. The court remarked that there was nothing said at the time, nor at any time, that the court would extend the time beyond the provisions of the statute for filing motions for new trial, for filing exceptions to instructions, or motions for arrest of judgment and for new trial. And in ruling thereon he sustained the county attorney's motion to strike motion for new trial, and to strike all that part of the instrument filed by the defendant entitled "Motion in arrest of judgment and for new trial", so far as it asked for a new trial, and overruled the part of the motion for arrest of judgment. The court then sentenced the defendant to imprisonment for a term of

twenty years, as provided in section 13141 of the Code. In these rulings of the court on the motions there was no error. State v. Higgins, 192 Iowa 201, 182 N. W. 887; State v. Barr, 123 Iowa 139, 98 N. W. 595; State v. Schwab, 112 Iowa 666, 84 N. W. 944.

∎∎∎ These cases all lay down the rule that the exceptions and motions must be filed in time, or they will be disregarded by this court. As to the ruling upon that part of the motion for new trial and arrest of judgment, which has to do with the arrest of judgment, this is dealt with by section 13946 of the Code of 1931, which is as follows:

"Motion in arrest defined—grounds. A motion in arrest of judgment is an application to the court in which the trial was had, on the part of the defendant, that no judgment be rendered upon a verdict against him, or on a plea of guilty, and shall be granted when upon the whole record no legal judgment can be pronounced."

This section appeared in the Code of 1897 as section 5426 and was considerably different, and therein it was provided, amongst other grounds, that the motion might be filed upon "any ground which would have been ground of demurrer." This portion has disappeared. So that now, practically, the courts hold that the motion cannot be sustained upon the grounds which would be grounds for demurrer. State v. Frey, 206 Iowa 981, 221 N. W. 445.

∎∎∎ The only ground now which can be included in a motion in arrest of judgment under section 13946 is when upon the whole record no legal judgment can be pronounced. In this case it was submitted to the jury properly. Any exceptions that might have been taken were waived by the failure to preserve in time. Hence, since the statute has been changed to read as it now does, there is no room in this state for a motion in arrest of judgment, except "upon the whole record no legal judgment can be pronounced."

∎∎∎ The only exception that is properly preserved in this case is with reference to the testimony of A. D. Clem, a member of the firm of Clem & Miller, attorneys at Sioux City, Iowa. Mr. Clem was called as witness by the state, and was asked if he ever had any conversation with Kirkpatrick around the first of May, and what was the business concerning which he talked. An objection was made that it was a privileged communication.

The objection was overruled. Clem & Miller had been retained as attorneys for the defendant, who was administrator of an estate which had no property except a tort claim. Mr. Clem was asked if he had any conversation about bonds with Kirkpatrick, in reference to the four bonds involved in this case. He said when Kirkpatrick asked him about the bonds that he, Clem, suggested that the Chicago Board of Trade be written about them, and that Kirkpatrick said he got the bonds in a real estate transaction. Then Mr. Clem suggested calling in a bond broker. Kirkpatrick wanted to leave the bonds with Clem, who had no facilities for handling them. They then called Mr. Dansby, a local broker, who came to Clem's office, and the matter was talked over. The bonds were turned over by Kirkpatrick to Dansby, and a receipt was given at the time, said receipt being to Clem & Miller, and when Miller saw it he objected to the same, and it was then changed to Kirkpatrick in care of Clem & Miller. The bonds were sold by Dansby as a broker. The question of forgery came up while Dansby was negotiating, and was talked over. Dansby sent his check for about $4,200 to Clem & Miller, payable to Kirkpatrick. They gave the check to Kirkpatrick, who cashed it, and he paid $65 of the money to Clem & Miller. Mr. Clem testified that was for a part of his services in reference to the bonds, and that he also took into consideration the compromise of various doctor bills in the estate that had not been paid. Clem said he had no other conversation with Kirkpatrick, except when Kirkpatrick was in jail.

The question which arises is: In the transaction between Clem and Kirkpatrick, was Clem employed as an attorney in the matter, or was he not simply acting for Kirkpatrick in putting him in touch with a broker? The evidence shows he was simply so acting.

Stoddard v. Kendall, 140 Iowa 688, 691, 119 N. W. 138, 140, was a case where a lawyer, in preparing a will for a widow who had continued in the occupancy and control of a property as a homestead, said to Mr. Willett, the attorney, "I intend to occupy that as a homestead as long as I live. I do not believe I have a child that will keep me out." Mr. Willett was asked for this testimony, and it was admitted and objected to as a confidential communication. The court said:

"The mere fact that the person offered as a witness is an

attorney at law does not render it improper for him to relate statements or communications made to him by another, nor is the fact that the person whose statements are sought to be proven was a client of said lawyer at the time the communication was made sufficient in itself to exclude the testimony of the latter concerning it. That which the statute forbids is a disclosure of 'confidential communications' properly intrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office, according to the usual practice and discipline. * * * The preparation of wills, though appropriately and commonly done by lawyers, is by no means exclusively confined to members of the profession. It may be done, and frequently is done, by persons in every rank and vocation of life. It is in many respects essentially the work of a scrivener. If a lawyer be employed in such service, the testator may ask at his hands legal advice and intrust him with confidential information to which without doubt the protection of the statute would apply, but the mere fact that the lawyer was engaged in preparing a will at or about the time a given statement was made—and that is all we have in the case before us— does not necessarily give it a confidential character. Mueller v. Batcheler, 131 Iowa 650, 109 N. W. 186.'' Toms v. Beebe, 90 Iowa 612, 58 N. W. 925; Theisen v. Dayton, 82 Iowa 74, 47 N. W. 891; Wasson v. Millsap, 77 Iowa 762, 42 N. W. 528. These cases and others cited lay down the rule, which, properly interpreted, would permit Clem to give the testimony offered.

There is another reason why the testimony of Mr. Clem was not objectionable. Kirkpatrick had the four bonds in his possession. He was trying to negotiate them. There was sufficient evidence on the whole record to show he knew they were forgeries, or something wrong with them. He was engaged in the attempt to commit a crime. How far can one be protected who is engaged in this sort of an attempt? The text-books and courts have a great deal to say about invoking the rule claimed that will not permit an attorney to disclose on the witness stand what was given to him in a professional way. Standard Fire Insurance Co. v. Smithhart, 183 Ky. 679, 211 S. W. 441, 5 A. L. R. 972, 973, holds that communications by one contemplating crime or the perpetration of fraud to an attorney for advice as to how to succeed are not privileged.

Thornton on Attorneys, 214, says:

"Where an attorney is consulted for the purpose of obtaining advice as to the perpetration of fraud, or in the aid or furtherance thereof, the communications made to him by one having such purpose in view, are not privileged."

The annotations to Standard Fire Insurance Co. v. Smithhart in the A. L. R. lay down the rule that since the perpetration of fraud is outside the scope of the duty of an attorney, no privilege attaches to communications between attorney and client with respect to the establishment of a false claim, citing numerous American and English cases in support of this.

United States v. De Vasto (C. C. A.) 52 F.(2d) 26, 78 A. L. R. 36; 28 R. C. L. 559, section 149, supports this rule. Therefore, there was no error in the court refusing to exclude the testimony of Mr. Clem.

It is a mistaken notion to think that an attorney has the right to assist in the perpetration of a fraud, and a mistaken notion to think that one having in mind the perpetration of a fraud or a crime can safely intrust this knowledge to an attorney any more than to anybody else. Two cases recently in the federal courts are in point; one where an attorney took $10,000 in money, the fruits of the Urschel kidnaping. He was convicted and sentenced for it; and one where an attorney of Chicago was convicted and sentenced for advising clients how to alter their appearance, etc., after the commission of a crime. These decisions were salutary.

We are abundantly satisfied by the evidence in this case that the defendant negotiated the bonds; that these bonds were forgeries; that he shortly afterward undertook to negotiate $6,000 more of the bonds of the same character, and that he knew and must have known that these bonds were crooked. So, we are well satisfied that the court had the right to submit the case to the jury, and the jury found a verdict of guilty from the evidence.

As to the sentence, the appellant cites the case of Drazich v. Hollowell, 207 Iowa 427, 223 N. W. 253, 254, probably for the purpose of having the court follow State v. Wall, 218 Iowa 171, 254 N. W. 71, 74. The state also cites the Drazich case.

The Wall case was one where there was an indictment and

information under the statute for obtaining money by false pretenses, section 13045 of the Code, and the indictment in charging the offense was under section 13045 of the Code of 1931. The court says the citation of this section was without legal effect and may be regarded as mere surplusage, and says further: "His sole valid complaint is that, in fixing the penalty the court should have been obedient to the prohibition contained in section 5093-a8, and should have confined the extent of the punishment to the maximum therein provided."

Section 5093-a8 was enacted by the 41st General Assembly chapter 6, and this dealt with the question of rebates on gasoline, and with nothing else. The indictment in the Wall case, but for the enactment of section 5093-a8, might very well have been sustained under section 13045, but section 5093-a8 having been passed subsequent to the other section, and providing for a particular punishment thereunder, the court held that the defendant Wall should have been sentenced under the last enactment of the legislature, and the one dealing with the particular offense; the other section dealing generally with such offense. The court reversed the case and remanded it to the district court, with instructions to sentence under the provisions of section 5093-a8.

In the Drazich case the defendant was charged with an offense of uttering a forged check, and was sentenced to an indeterminate period not exceeding fifteen years, under section 4854 of the Code of 1897, and this court held in a habeas corpus proceeding that Drazich should have been sentenced under section 4858 of the Code of 1897 (section 13144, C., '31), and as his time had expired under the provisions of the last-cited section, he was entitled to his discharge. And while perhaps Kirkpatrick might have been indicted under either section 13141 or 13144, yet the court said in the Drazich case, "We have two provisions in the criminal laws, each if standing alone prescribing the penalty for the offense in question. One provision is general and the other particular," and holding that the sentence in that case must be under the particular statute, and not the general statute.

In the case in hearing, conceding that we have two statutes, sections 13141 and 13144, section 13141 makes it an offense either to falsely make, utter, forge, or counterfeit any note, certificate, state bond, warrant, or other instrument being public security, and purporting to be issued by the authority of this or any

other state. While section 13144 is general and makes it an offense for any persons who utter, pass, or tender in payment any false, altered, forged, or counterfeited note, certificate, state bond, warrant, or other instrument of public security, etc. So, we conclude that the offense here was properly charged under section 13141, it being a particular statute confined to the class of securities involved herein, and while covered by the general statute, the general statute must give way in interpretation to the particular statute. Therefore, and for the reasons herein stated, the decision of the lower court is hereby affirmed.—Affirmed.

KINTZINGER, C. J., and ALBERT, MITCHELL, DONEGAN, and HAMILTON, JJ., concur.