**PALMERO et al. v. UNITED STATES.**

No. 3483.

Circuit Court of Appeals, First Circuit.

June 28, 1940.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

The defendants, appellants, were convicted on three separate indictments which were tried together. They were charged with aiding and abetting in the unlawful importing and bringing into the United States of a certain quantity of gum opium, and aiding and abetting in concealing the same, in violation of the Narcotic Drugs Import and Export Act, Title 21, U.S.C.A. §§ 173, 174, and in violation of the Tariff Act of 1930, Title 19 U.S.C.A. § 1593(b), and with conspiracy to violate the Narcotic Drugs Import and Export Act.

Briefly the facts are as follows: On March 13, 1939, when the "Steamship Exeter", en route from Marseille to New York, called at the Port of Boston, custom inspectors in searching the ship found fifty-four pounds more or less of gum opium contained in twenty-five packages in a locker on the ship. They brought the opium ashore and confiscated it. Two of the defendants in these indictments, Nicholas Lachaga and Harvey Hilton, both employed on the "Exeter", pleaded guilty to the indictments. Lachaga testified that he met the defendants Esteiro and Palmero in New York; that he was introduced to them by the co-defendant Zarandona, who also pleaded guilty, at the Basque Club in New York City; that they brought him to an apartment where he was introduced to a Frenchman by the name of Pierre Peone, and arrangements were then made to bring in the "stuff". He arranged to meet said Peone in Marseille, which he did, and Peone arranged to have the "stuff" delivered on board the ship through a baggageman. He also testified that the intention was to keep the opium concealed on board the "Exeter" until the boat arrived at the Port of New York, where the opium was to be delivered to the appellants, or persons whom they should designate.

Hilton testified that Lachaga had put the proposition to him in connection with smuggling narcotics into the United States; that on March 2, 1939, Lachaga came to him and told him that the consignment was on board and asked him to send a cablegram from Marseille, which he did. This cablegram was sent to the co-defendant Zarandona, alias John Begona, who was a bartender at the Basque Club in New York

William H. Lewis, of Boston, Mass. (William H. Lewis, Jr., of Boston, Mass., on the brief), for appellants.

Robert W. Meserve, Asst. U. S. Atty., of Boston, Mass., (Edmund J. Brandon, U. S. Atty., and William T. McCarthy, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

City, who delivered the cablegram to Esteiro at the club.

It is agreed that the sole question for consideration by this court is whether or not there was such importation or bringing in, or conspiracy to import, or to bring in, as required by the statutes under which the defendants were convicted.

Indictment No. 14571 charges violations of the Narcotic Drugs Import and Export Act. The language of the statute is that:

"It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; * * *" (21 U.S.C.A. § 173).

"If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, * * *" (21 U.S.C.A. § 174).

■ In considering the charges under this indictment, it is of paramount importance to bear in mind that opium which has no legitimate use has long been considered an international outlaw and Congress has used great care in preventing its entry into this country as an article dangerous to the health and morals of the people. The Narcotic Drugs Import and Export Act is a prohibitory statute forbidding the importing or bringing into the United States, or any territory under its control or jurisdiction, any narcotic drug, except under certain regulations. It is not a law for the imposition of duties. It is analogous to the National Prohibition Act, 27 U.S.C.A. § 1 et seq., which was passed under the Eighteenth Amendment, prohibiting the importation of intoxicating liquors for beverage purposes into the United States, and all territories subject to the jurisdiction thereof, except in certain specific instances. ✓

It is the contention of the appellants that there was no "importation" or "bringing in" sufficient to sustain the conviction.

■ To effectuate the purpose of the Narcotic Drugs Import and Export Act, it is necessary to construe the words "import or bring" in their natural meaning. "Interpreted thus, they clearly prohibit the bringing of the prohibited article within the territorial boundaries of the United States —that is, alike within the waters or upon the lands—and to say that the commission of the offense is suspended until the actual landing of the goods misses wholly the prohibitive character of the act." United States v. Caminata, D.C., 194 F. 903, 905.

When Congress amended the Narcotic Drugs Import and Export Act in 1922, the Ways and Means Committee of the House of Representatives in its report (H. Rep. No. 852, 76 Cong. 2d Sess. dated March 27, 1922) recognized the force and validity of the reasoning of the Court in United States v. Caminata, supra, by citing it in support of the legislative intent to penalize not only the importation of opium across customs lines, but also the bringing of it into the territorial limits of the United States.

In construing the prohibitory provision of the Eighteenth Amendment and the National Prohibition Act, the Supreme Court held in Cunard Steamship Co. v. Mellon, 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894, 27 A.L.R. 1306, that the alcoholic beverages therein involved, which had not been unladen, had been imported when they were brought into the territorial waters of the United States. It was also held in Alksne v. United States, 1 Cir., 39 F.2d 62, 68, that the bringing in of intoxicating liquors intended for beverage purposes within the three-mile limit, though without an intent to land, "is not only forbidden transportation, but forbidden importation". See also The Resolution, D. C., 30 F.2d 534; Middleton v. United States, 5 Cir., 32 F.2d 239; Gillespie v. United States, 2 Cir., 13 F.2d 736.

■ It is clear, then, that there was an "importation" or "bringing in" of the opium when the S. S. Exeter entered the territorial waters of the United States, and a concealment of the same. Under the statute importation and bringing in of the opium and concealment of the same thereafter are distinct violations. Appellants aided and abetted the commission of both of these offenses. Krench v. United States, 6 Cir., 42 F.2d 354. While it is true that the appellants were outside the jurisdiction of the trial court during the time the opium was imported or brought in and concealed, they may be convicted of aiding and abetting if the court has jurisdiction of them at the time of the trial. Callahan v. United States, 3 Cir., 53 F.2d 467. See

also Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793.

It makes no difference whether the opium was landed in Boston, or an attempt had been made to land it there. It is sufficient for the conviction that it was brought into the territorial waters of the United States and concealed there.

There was no error in the refusal of the trial judge to give the instructions requested and the conviction of the defendants under indictment No. 14571 is affirmed.

█ Indictment No. 14578 charges violation of § 593(b) of the Tariff Act of 1930 (19 U.S.C.A. § 1593(b) ). The defendants did not raise any question as to the sufficiency or construction of the indictment. Cf. Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505. At no time was the court called upon to rule that the indictment was invalid on the ground that it was vague and did not state with sufficient particularity the provisions of the law alleged to have been violated. This matter is not before us. But there is present the serious question whether the convictions under the Narcotic Drugs Import and Export Act, 21 U.S.C.A. §§ 173, 174, and § 593(b) of the Tariff Act of 1930, 19 U.S.C.A. § 1593(b) do not impose a double penalty upon the defendants for the same offense. If the word "merchandise" in said § 593(b) of the Tariff Act of 1930 includes any narcotic drug, then a conviction under the Tariff Act would be for the identical act also punishable under the Narcotic Act.

§ 593(b) of the Tariff Act of 1930, 19 U.S.C.A. § 1593(b) is as follows:

"If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited * * *."

█ It is a reenactment of R.S. § 3082 which first appears in § 4 of the Act of July 18, 1866, 14 Stat. 178, 179. This section of the statute is general in its terms. The penalty imposed under it is for acts committed "contrary to law" and to ascertain what is contrary to law reference must be made to some other statutory provision. R.S. § 3082 was in force at the time of the enactment in 1909 of the Opium Act, 35 Stat. 614, which is the predecessor of the Narcotic Drugs Import and Export Act. The Opium Act dealt specifically with the unlawful importation of opium into the United States or any territory under its control or jurisdiction and imposed the identical penalty for the violation of its provisions as was imposed by R.S. § 3082 for the importation of "merchandise * * * contrary to law". The legislative history of the Opium Act indicates that the importation of opium as an article of merchandise was intended by Congress to be withdrawn from the general provisions of R.S. § 3082 and dealt with specifically in a separate statute. See H. Rep. No. 2003, 60th Cong., 2d Sess., Feb. 1, 1909; H. Rep. No. 1878, 60th Cong., 2d Sess., Jan. 19, 1909. After the enactment of the Opium Act, therefore, the word "merchandise" in R.S. § 3082 no longer included opium. Hence, when the Tariff Act of 1930 in Section 593(b) reenacted R.S. § 3082, the word "merchandise" in the Tariff Act had the same restricted meaning.

Mr. Justice Field, dissenting, in Stockwell v. United States, 13 Wall. 531, 555, 20 L.Ed. 491, said that:

"Different punishments being prescribed for the same offences by the two statutes, the latter statute must be held, according to all the authorities, to have superseded and repealed the penalty prescribed by the first statute. Such was the unanimous decision of this court in Norris v. Crocker," 13 How. 429, 14 L.Ed. 210.

The court in Drazich v. Hollowell, 207 Iowa 427, 223 N.W. 253, 254, in considering provisions of the criminal law of Iowa, said:

"We have two provisions in the criminal laws, each if standing alone prescribing the penalty for the offense in question. One provision is general and the other particular."

and held that the sentence in this case must be under the particular statute, and not the general statute.

State v. Kirkpatrick, 220 Iowa 974, 263 N.W. 52, 56, holds that the general statute must give way in interpretation to the particular statute.

In State v. Wall, 218 Iowa 171, 254 N.W. 71, 73, the court stated:

"There is in vogue a general rule of interpretation that, as between conflicting statutes, the earlier must yield to the later, and the generic to the specific."

See also Bruno v. United States, 1 Cir., 289 F. 649; United States v. Yuginovich, 256 U.S. 450, 463, 41 S.Ct. 551, 65 L.Ed. 1043.

■ The conviction of the defendants under indictment No. 14578 is set aside.

Indictment No. 14577 charges these defendants, with others, with conspiracy to violate the Narcotic Drugs Import and Export Act by importing and bringing into the United States narcotic drugs, and by assisting in so doing contrary to law, and by fraudulently and unlawfully receiving and concealing the same. One of the overt acts charged is that certain co-defendants did bring into the Port of Boston, in the District of Massachusetts, and within the jurisdiction of the court, the narcotic drugs described in the indictment.

■ It appears from the record that the defendants resided in New York, and the evidence does not show that they were ever in Massachusetts, but it is clear that they were parties to the conspiracy. The conspiracy was planned in New York and was to be carried out by various acts in different jurisdictions. The act of bringing the drugs into the Port of Boston, whether or not they were to be landed there, was an act in execution of the conspiracy. This gave the District Court of Massachusetts jurisdiction. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Hicks v. United States, 8 Cir., 275 F. 405. The fact that the defendants remained in New York and did not come into the District of Massachusetts did not prevent their conviction for acts done in Massachusetts through the conspiracy.

"The constitutional provisions as to venue in Article 3, § 2, and in the Sixth Amendment, require trial where 'the crime shall have been committed,' not where the accused was when the crime was committed." Cooper v. United States, 5 Cir., 91 F.2d 195, 198, 199.

■ The object of the conspiracy was to import and bring into the United States opium, which was absolutely prohibited. The act of one of the conspirators is the act of all the conspirators, and when the opium was brought within the territorial waters of the United States, the overt act which gave this court jurisdiction had been committed. The fact that the opium was brought ashore by the officers of the United States makes no difference. Jung Quey v. United States, 9 Cir., 222 F. 766.

The conviction under indictment No. 14577 is without error under the facts and the law in this case and is affirmed.

The judgments of the District Court under Indictments No. 14571 and No. 14577 are affirmed. The verdict and judgments under Indictment No. 14578 are set aside, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.